X
A

## Topical Index

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Questions Presented for Review . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Necessity for Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of the Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I       The trial court erred by permitting Susan Hayes to testify as to
        statements made by Katie Sue under the "fresh complaint
        doctrine" and Evidence Code section 1360 . . . . . . . . . . . . . . . . . 3

II      Katie Sue was not a competent witness and the trial court
        erred by admitting her testimony . . . . . . . . . . . . . . . . . . . . . . . 7

III     There was insufficient evidence to sustain either child molest
        conviction, or the multiple victim allegation . . . . . . . . . . . . . . . . 11

IV      The trial court erred in permitting the prosecution to introduce
        the testimony of petitioner's former step-daughter and ex-wife
        to relate details of his 1995 child molest conviction . . . . . . . . . . . 15

V       The trial court erred in permitting the social worker to testify
        as an expert on the so-called "Child Sexual Abuse
        Accommodation Syndrome." . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Court of Appeal Opinion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Table of Authorities

*Cases*

*Chapman v. California*
        (1967) 386 U.S. 18 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 29

*Coy v. Iowa*
        (1988) 487 U.S. 1012 . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Idaho v. Wright*
        (1990) 497 U.S. 805 . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Jackson v. Virginia*
        (1979) 443 U.S. 307 . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Maryland v. Craig*
        (1990) 497 U.S. 836 . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Commonwealth v. Dunkle*
        (1992) 529 Pa. 168 [602 A.2d 830] . . . . . . . . . . . . . . . . . . . 27

*Franklin v. Henry*
        (9th Cir. 1997) 122 F.3d 1270 . . . . . . . . . . . . . . . . . . . . . . 27

*In re Clara B.*
        (1993) 20 Cal.App.4th 988 . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Sara M.*
        (1987) 194 Cal.App.3d 585 . . . . . . . . . . . . . . . . . . . . . . . . 21

*New Jersey v. Michaels*
        (1993) 264 N.J. Super. 579 . . . . . . . . . . . . . . . . . . . . . . . . 10

*North Carolina v. Kelly*
        (1995) 118 N.C. App. 589 . . . . . . . . . . . . . . . . . . . . . . . . 9

*Payton v. Woodford*
        299 F.3d 815 (9th Cir. 2002) (en banc) . . . . . . . . . . . . . . . . . . 27

*People v. Bergschneider*
    (1989) 211 Cal.App.3d 144 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*People v. Bowker*
    (1988) 203 Cal.App.3d 385 . . . . . . . . . . . . . . . . . . . . . . 21-23, 29

*People v. Branch*
    (2001) 91 Cal.App.4th 274 . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*People v. Brown*
    (1994) 8 Cal.4th 746 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

*People v. Burton*
    (1961) 55 Cal.2d 328 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*People v. Crew*
    (2003) 31 Cal.4th 822 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*People v. Eccleston*
    (2001) 89 Cal.App.4th 436 . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*People v. Escobar*
    (2000) 82 Cal.App.4th 1085 . . . . . . . . . . . . . . . . . . . . . . . . . 19

*People v. Ewolt*
    (1994) 7 Cal.4th 380 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*People v. Fair*
    (1988) 203 Cal.3d 1303 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*People v. Falsetta*
    (1999) 21 Cal.4th 903 . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19

*People v. Gilbert*
    (1992) 5 Cal.App.4th 1372 . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*People v. Gonzales*
    (1967) 66 Cal.2d 482 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*People v. Harlan*

(1990) 222 Cal.App.3d 439 . . . . . . . . . . . . . . . . . . . . . . . . . 22

*People v. Harris*
    (1998) 60 Cal.App.4th 727 . . . . . . . . . . . . . . . . . . . . . . . . . 19

*People v. Housley*
    (1992) 6 Cal.App.4th 947 . . . . . . . . . . . . . . . . . . . . . . . . 22, 26

*People v. Jeff*
    (1988) 204 Cal.App.3d 309 . . . . . . . . . . . . . . . . . . . . . . . . . 29

*People v. Johnson*
    (1980) 26 Cal.3d 557 . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*People v. Johnson*
    (1993) 19 Cal.App.4th 778 . . . . . . . . . . . . . . . . . . . . . . . . . 28

*People v. McAlpin*
    (1991) 53 Cal.3d 1289 . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*People v. Meachum*
    (1984) 152 Cal.3d 142 . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*People v. Pantoja*
    (2004) 122 Cal.App.4th 1 . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*People v. Patino*
    (1994) 26 Cal.App.4th 1737 . . . . . . . . . . . . . . . . . 13, 21, 22, 25

*People v. Reilly*
    (1970) 3 Cal.3d 421 . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*People v. Roberto V.*
    (2001) 93 Cal.App.4th 1350 . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*People v. Roscoe*
    (1985) 168 Cal.App.3d 1093 . . . . . . . . . . . . . . . . . . . . . . . 28

*People v. Rowland*
    (1992) 4 Cal.4th 238 . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*People v. Sanchez*
(1989) 208 Cal.App.3d 721 . . . . . . . . . . . . . . . . . . . . . . . . 22

*People v. St. Andrew*
(1980) 101 Cal.App.3d 450 . . . . . . . . . . . . . . . . . . . . . . . 30

*People v. Stark*
(1989) 213 Cal.App.3d 107 . . . . . . . . . . . . . . . . . . . . 22, 23

*People v. Thompson*
(1980) 27 Cal.3d 303 . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*People v. Torres*
(1995) 33 Cal.App.4th 37 . . . . . . . . . . . . . . . . . . . . . . . . 28

*People v. Walker*
(1931) 112 Cal.App. 146  . . . . . . . . . . . . . . . . . . . . . . . . 7

*People v. Watrous*
(1935) 7 Cal.App.2d 7 . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*People v. Watson*
(1956) 46 Cal.2d 818 . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*State v. Stribley*
(Iowa App. 1995) 532 N.W.2d 170 . . . . . . . . . . . . . . . . . . . 27

*Vorse v. Sarasy*
(1997) 53 Cal.App.4th 998 . . . . . . . . . . . . . . . . . . . . . . . 17

*Statutes*

Penal Code
section 1237  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2


Evidence Code
section 1101  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
section 1101 subd. (a) . . . . . . . . . . . . . . . . . . . . . . . . . 16
section 1108  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

section 1360 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3-5
section 352 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-19
section 402 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5
section 701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
section 701 subd. (a)(2) . . . . . . . . . . . . . . . . . . . . . . . . 8

United States Constitution
        Fifth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
        Fourteenth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
        Sixth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 23

California Constitution
        Article I, sections 1, 7, 15 and 16 . . . . . . . . . . . . . . . . . . . . . . 23

Other Authorities
        28 Pacific Law Journal 6, 8 (1996) Psychological Research on Children as
        Witnesses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        CALJIC No. 10.64 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
        Ceci and Friedman, The Suggestability of Children: Scientific Research
        and Legal Implications (2000) 86 Cornell Law Rev. 33 . . . . . . . . . . 10
        Child Sexual Abuse Accommodation Syndrome . . . . . . . 20-27, 29, 30
        D. Schaffer, Developmental Psychology (1985) . . . . . . . . . . . . . . 10
        Stephen J. Ceci, Mary Lyndia Huffman, Elliot Smith and Elizabeth
        Loftus, *Repeatedly Thinking About a Non-Event: Source Misattributions
        Among Preschoolers,* 3 Consciousness and Cognition 388 (1994). . . . 13
        Wolfgang Schneider and Michael Pressly, Memory Development Between
        2 and 20 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

SUPREME COURT NO. _____

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA,)<br>Plaintiff and Respondent, ) <br> ) <br>v. ) <br> ) <br>RICHARD PETER DEARMENT, ) <br>_____Defendant and Petitioner._____ ) | Court of Appeal<br>No. D052188<br><br>Superior Court<br>No. SCE270987 |

APPEAL FROM THE SUPERIOR COURT
OF SAN DIEGO COUNTY

Honorable William J. McGrath, Judge

PETITION FOR REVIEW AFTER THE UNPUBLISHED DECISION
OF THE COURT OF APPEAL, FOURTH APPELLATE DISTRICT,
DIVISION ONE, AFFIRMING THE JUDGMENT OF CONVICTION

**Questions Presented for Review**

1.  Whether the court erred in allowing the witness to testify as to the

details her daughter described under the "fresh complaint" doctrine and

Evidence Code section 1360.

2.  Whether the trial court erred in failing to conduct a hearing to

determine whether the confused 5 year-old was competent to testify.

3.  Whether the evidence supported the child molest conviction or

allegation where the five year-old alleged victim was unable to recall any details

1

until she was coached by her parents at trial.

    4.  Whether the court erred in allowing testimony of petitioner's 1995 child molest conviction.

    5.  Whether the court erred in permitting the social worker to testify as an expert on Child Sexual Abuse Accommodation Syndrome.

## Necessity for Review

Review should be granted in this case to decide important questions of law. First, the "fresh complaint" doctrine and Evidence Code section 1360 allow evidence of a report of a recent sexual assault, but have never permitted a full description of the details of the report.

Next, this court should determine whether a hearing is necessary to determine the competency of a five year-old witness whose statements were contradictory and showed no recollection of the alleged events, and whether the evidence supported the convictions in light of her post-coaching testimony which contradicted her earlier statements.

Finally, the court should address the issue of whether a social worker may testify as an expert on Child Sexual Abuse Accommodation Syndrome.

## Statement of the Facts

Petitioner adopts the Factual Summary presented in the attached opinion.

////

2

**Argument**

**I**

**The trial court erred by permitting Susan Hayes to testify as to statements made by Katie Sue under the "fresh complaint doctrine" and Evidence Code section 1360.**

*Background*

The defense objected to Susan Hayes being permitted to testify as to the details of Katie Sue's initial revelation that she had been molested by petitioner. (1 RT 30.)  The prosecution sought to introduce this evidence under the "fresh complaint doctrine" and Evidence Code section 1360. (1 RT 30.)

Susan Hayes stated that she bathed Katie Sue on the evening of February 25th, 2007. (3 RT 243.)  She then applied skin lotion as she always did.  (3 RT 243.)  When some skin lotion neared her private area, Katie Sue told her mother that petitioner had applied skin lotion in that area, and opened her legs to show her precisely where. (3 RT 243.)  When her mother said that boys' "pee pees" are funny looking and small, Katie Sue said that petitioner's was "big," and held her hands about six inches apart. (3 RT 244.)

Susan Hayes also testified that, after the initial complaint was rejected for prosecution, Katie Sue made a second revelation stating that petitioner had her play a game and that he placed his "pee pee" against hers. (3 RT 260.)  She said this occurred during a play date. (3 RT 260.)  He did not hurt her. (3 RT 261.)

*////*

3

*Applicable Law*

The "fresh complaint doctrine" permits the introduction of a victim's complaint to another person of a then-recent sexual assault.  It is permitted for the nonhearsay purpose of establishing only that a complaint was made. (See *People v. Brown* (1994) 8 Cal.4th 746, 757.  [discussing and modifying the doctrine].)  The third party testifying cannot relate details  of the assault, only that the victim complained that a sexual assault had occurred. (*Id.* at p. 761.)  "[A]lthough details cannot be recounted, it can be shown by the People that the complaint related to the matter being inquired into . . . that is, the alleged victim's statement of the nature of the offense and the identity of the asserted offender, without details, is proper." (*People v. Burton* (1961) 55 Cal.2d 328, 351. See also *People v. Meachum* (1984) 152 Cal.3d 142, 159, and *People v. Fair* (1988) 203 Cal.3d 1303, 1313.)  The complaint cannot be admitted if it is made in response to questioning. (*Ibid.*)

Evidence Code section 1360 provides that in a criminal prosecution in which the victim is a minor, a statement made by the victim when under the age of 12 describing any act of child abuse is not made inadmissible by the hearsay rule.  The statement cannot be admissible under any other statute; a hearing under Evidence Code section 402 is required for the court to determine whether the circumstances of the case demonstrate the reliability of the statement, and the

4

child testifies at trial or is found to be unavailable as a witness. (Evid. Code section 1360; *People v. Roberto V.* (2001) 93 Cal.App.4th 1350, 1376.) The confrontation clause of the Sixth Amendment is violated where the hearsay statements bear no indicia of reliability. (*Idaho v. Wright* (1990) 497 U.S. 805.)

*Legal Analysis*

The details of Katie Sue's allegations related by her mother were inadmissible under the hearsay rule.  While the nature of Katie Sue's allegations was admissible under the fresh complaint doctrine, the details (he used lotion or powder, he made me play a game, he put his "pee pee" against mine, her description of petitioner's private area, etc.) were not. (*People v. Burton, supra,* 55 Cal.2d 328, 351.)  Many of these details were not otherwise introduced.[1]

These details were also not admissible as an exception to the hearsay rule under Evidence Code section 1360.  The court did not hold a section 402 hearing to determine whether there were factors showing the statements to be reliable. Reliability may only be inferred if the hearsay is admitted under a firmly rooted exception, of which Evidence Code section 1360 is not. (*People v. Roberto V., supra,* 93 Cal.4th 1350, 1377.)  In order to pass review under the confrontation

---

[1] Petitioner contends below that Katie Sue was incompetent to testify.  If the court agrees with this argument, then Katie Sue's extra-judicial statements to both her mother and the social workers who interviewed would also be inadmissible. (*In re Clara B.* (1993) 20 Cal.App.4th 988, 997.)

5

clause, any statements admitted under section 1360 must contain "particularized guarantees of trustworthiness." (*People v. Eccleston* (2001) 89 Cal.App.4th 436, 445, quoting *Idaho v. Wright, supra,* 497 U.S. 805, 821-822.)  Many extrajudicial statements made by children bear no indicia of reliability. (See gen., *People v. Pantoja* (2004) 122 Cal.App.4th 1, 11-13 [statement made in declaration in support of application for restraining order was insufficiently reliable to be admissible].)

*The error was prejudicial.*

The California Supreme Court has indicated, "[I]f the details of the victim's extrajudicial complaint are admitted into evidence, even with a proper limiting instruction, a jury may well find it difficult not to view these details as tending to prove the truth of the underlying charge of sexual assault . . ." (*People v. Brown, supra,* 8 Cal.4th 746, 763.)

The statements were ultimately admitted for their truth. Because the evidence in this case was weak and contradictory, these errors must be deemed prejudicial. (*People v. Roberto V., supra,* 93 Cal.4th 1350 at 1376-1377.)  This is so whether the error is reviewed under *Chapman v. California* (1967) 386 U.S. 18, 24, in light of the Confrontation Clause violation, or *People v. Watson* (1956) 46 Cal.2d 818, that otherwise governs evidentiary errors.

////

6

## II

### Katie Sue was not a competent witness and the trial court erred by admitting her testimony.

#### *Background*

The trial court permitted the prosecution to call Katie Sue as a witness, without holding a hearing to determine whether she was competent to testify. Without her testimony, the entire case would crumble. The trial judge acknowledged this point. ( 2 RT 159-160.)

The court was aware that Katie Sue had given conflicting versions of the alleged incidents. She was also unclear as to the timing of the events. At a preliminary examination, she stated that did not recall *any* of the allegations that were attributed to her, had never seen petitioner's privates, and answered "I forget" when asked if petitioner had touched her. (See 1 PHT 7-18.) Outside the courtroom, immediately after the preliminary examination, Katie Sue's parents were angry and scolded her repeatedly for not testifying to what they believed the truth to be.

#### *Applicable Law*

California eliminated the presumption that a child witness under 10 years-old must first be shown as competent prior to testifying. (Former Code of Civ. Pro. Section 1880(2).) Children as young as four or five years have been found to be competent. (See *People v. Walker* (1931) 112 Cal.App. 146, 147; and,

7

*People v. Watrous* (1935) 7 Cal.App.2d 7, 10.)

A child's competency to testify is determined under the general test of Evidence Code section 701. Essentially, the child must be capable of understanding the duty of a witness to tell the truth. (Evidence Code section 701 subd. (a)(2).) Allowing the testimony of an incompetent child would violate federal due process and confrontation clause guarantees. (See *Coy v. Iowa* (1988) 487 U.S. 1012, where the court discussed the importance of meaningful questioning of child witnesses in molestation cases.)

### *Legal Analysis*

Katie Sue had previously demonstrated, at the preliminary examination, that she was unable to accurately recall and relate the allegations attributed to her by her mother. When she could not do this, she was severely reprimanded by both parents.

Susan Hayes had been cautioned by the forensic interviewers that by talking to and questioning Katie Sue about these alleged events, she might "contaminate" Katie Sue's ability to accurately recall the events. (3 RT 364, 366.) Nevertheless, Susan Hayes talked to Katie Sue about these events "quite a lot," (3 RT 321), told her things like "don't forget to talk about Elli" (petitioner's daughter), and that she needed to say these things so "that bad man will go to jail and stay there . . . and no other little girls will get hurt." (3 RT

288.)

Katie Sue said that she was five years-old, not three or four when these events occurred. (3 RT 319.)  She had a party for her fifth birthday (seven months earlier), but could not recall if her best friend was present or not. (3 RT 319.)  She insisted the molestation occurred the night her father was injured (July 3rd, 2006), not any other time. (3 RT 320.)  She said that the entire DeArment family was home that night, but had earlier said that she was there when petitioner's wife and 15 year-old stepdaughter were not home. (3 RT 310, 320.)

Katie Sue's ability to tell the truth may well have been affected by the pressure exerted by her parents and the suggestive influence of her mother's statements to her.  This should have raised a red flag with the court, yet it nevertheless failed to conduct a competency hearing.  And while Katie Sue gave perfunctory answers when questioned by the prosecutor as to whether she knew the difference between a lie and the truth, this does not reduce the potential impact of any prior contamination of her memory.

Children frequently lie for various reasons.  Both science and several celebrated cases reveal this to be true. (See *Maryland v. Craig* (1990) 497 U.S. 836, 868 (dis. opn. of Scalia, J.) [listing studies showing children are subject to fantasy]; *North Carolina v. Kelly* (1995) 118 N.C. App. 589, 456 N.E.2d 861

[judgment reversed in infamous "Little Rascals" case where 29 children claimed to have been sexually molested at a day care center and corroboration was nonexistent]; *New Jersey v. Michaels* (1993) 264 N.J. Super. 579, 625 A.2d 489 [similar].)

Moreover, there was no inquiry as to the *ability* of a five year-old to accurately recall and relate events which occurred one and one-half years earlier, when she was just three years-old. (See gen., D. Schaffer, Developmental Psychology (1985); Ceci and Friedman, The Suggestability of Children: Scientific Research and Legal Implications (2000) 86 Cornell Law Rev. 33, 84 fn. 233. See also, extensive review of the subject, 28 Pacific Law Journal, pp. 6- 89 (1996)[2]; Wolfgang Schneider and Michael Pressly, Memory Development Between 2 and 20 (1989).

The trial court did not so much abuse its discretion, but rather failed to

---

[2] "Current research also suggests that young children's memories often fade relatively quickly and thus are more fragile (e.g., open to false suggestions) than the memories of older children and adults. Nevertheless, *some* are well-retained by children over long periods of time, and at least by the age of four or five years, children can often, *although not always*, resist some false suggestions about personally significant events." (*Id.* at p. 14, fn. 36.) "One hypothesis is that young children have more difficulty than older children and adults in determining the *source* of their memories. Thus, young children may confuse information that is told to them with information from personal experience. Moreover, young children may confuse two similar events, both of which may have actually occurred. These characteristics – sometimes called source misattribution – occur with older children and adults as well, yet preschool-age children appear to be particularly vulnerable." (*Id.* at p. 18, fn. 52.)

10

exercise it in making a determination as to Katie Sue's competency in the face of numerous indicators that she may not be capable of telling the truth. This deprived petitioner of a fair trial under both state and federal standards of prejudice. Reversal is required.

## III

### There was insufficient evidence to sustain either child molest conviction, or the multiple victim allegation.

#### Background

The entire case against petitioner rested on the out-of-court statements attributed to Katie Sue, and her trial testimony.

While unable to recall virtually anything asked of her at the preliminary examination, months later, at trial, Katie Sue was able to recite a version of events which resulted in petitioner's convictions.

At the time of trial, Katie Sue was five and one-half years-old. (3 RT 307.) She said she knew the difference between a lie and telling the truth, and if she lied she would be punished. (3 RT 308.) She said that she had been to the DeArment house when only petitioner and Elli were there. (3 RT 310.) She said that petitioner had touched her "private part." (3 RT 314.) This occurred in the bedroom when Elli was there also. (3 RT 314.)

Petitioner had them walk in circles. (3 RT 315.) He would take turns touching each of their private parts. (3 RT 315.) He would touch them with his

11

hand and his own private part, which was "long." (3 RT 316.) He had each girl pull down her pants. (3 RT 316.) His pants were also down. (3 RT 318.) He told them this was a "secret" game. (3 RT 318.)

Katie said that she was five years-old when this happened, and that Elli was three. (3 RT 319.) It happened the night her father was injured in an accident. (3 RT 320.) Petitioner had given her a bath. (3 RT 321.)

Her mother told her that petitioner was a "bad man," and had talked to her about what occurred "quite a lot." (3 RT 323.)

The court noted there were many pauses between questions and Katie's answers. (3 RT 326.) When asked if she had told the truth, Katie Sue paused for about five seconds before answering, "yes". (3 RT 326.)

### Applicable Law

When a defendant claims that there is insufficient evidence to sustain a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 319; *People v. Johnson* (1980) 26 Cal.3d 557, 576.)

> The test on appeal is whether substantial evidence supports the conclusion of the trier of fact, not whether the evidence proves guilt beyond a reasonable doubt. [Citation omitted.] The appellate court must determine whether a reasonable trier of fact could have found the

12

prosecution sustained its burden of proving the defendant guilty beyond a reasonable doubt.

(*People v. Reilly* (1970) 3 Cal.3d 421, 425, quoted in *People v. Johnson, supra,* 26 Cal.3d 557, 576.)

"Evidence," to be "substantial" must be "of ponderable legal significance . . . reasonable in nature, credible, and of solid value." (*Ibid.*) The substantial evidence test is to be applied to each element of the offense(s) charged. (*People v. Patino* (1979) 95 Cal.App.3d 11, 26.)

### Legal Analysis

Katie Sue's testimony was contradictory, confused, and preceded months earlier by her appearance at the preliminary examination in which she was unable to remember *any* of the details she later claimed to recall at trial.  She had been coached and repeatedly questioned by her parents, and reprimanded by both when she failed to recall allegations attributed to her by her mother.  She had been interviewed by investigators many times and provided conflicting versions of the alleged incidents.[3]

After C.P.S. initially rejected the case for prosecution, Susan Hayes called the investigator with the news that Katie Sue had just made a second,

---

[3] At least one study has concluded that repeatedly interviewing pre-schoolers may foster conditions for fictitious memories. (Stephen J. Ceci, Mary Lyndia Huffman, Elliot Smith and Elizabeth Loftus, *Repeatedly Thinking About a Non-Event: Source Misattributions Among Preschoolers,* 3 Consciousness and Cognition 388 (1994).)

13

unprompted revelation, and that she (Susan) had just recalled a second occasion when petitioner had been alone with Katie Sue.

While a reviewing court will not reweigh the evidence, such evidence, must, as stated above, be reasonable, credible and of solid value. (*Ibid.*) Katie Sue's recollection of these events is none of these. It is not reasonable to expect that a child of this age would be able to recall and relate events that allegedly occurred when she was only three and one-half years old. (See 28 Pacific Law Journal 6, 8 (1996) <u>Psychological Research on Children as Witnesses</u>.) And there are no facts in the present case that show Katie Sue's statements to be more reliable than those of other young children.

Our justice system should not countenance a life prison term based on such insubstantial evidence. Due process demands more. The evidence was insufficient to support either child molest conviction, and a reversal of the convictions is required.

////

////

////

////

////

////

14

## IV

**The trial court erred in permitting the prosecution to introduce
the testimony of petitioner's former step-daughter and ex-wife
to relate details of his 1995 child molest conviction.**

### *Background*

Petitioner's ex-wife testified that he had molested her daughter in 1995. (4
RT 395.)  She said that her then four year-old daughter, Jaymi, would many
times come into their bed, sleeping in between them. (4 RT 396.)  She woke up
early one morning and believed something unusual was happening when she saw
movement beneath the blankets covering her daughter. (4 RT 397.)  Petitioner
got up and went into the other room. (4 RT 397, 399.)  She asked Jaymi if
petitioner had been touching her and she replied, "Yes." (4 RT 398, 400.)
Petitioner had been rubbing her private area. (4 RT 400.)

Petitioner initially denied the accusation, but later admitted it in a police-
recorded control phone call, which was played for the jury. (4 RT 408.)

Jaymi, who was 16 years-old when she testified, related details of
petitioner rubbing her vagina when she was four years-old. (4 RT 413.)  He did
this on many occasions. (4 RT 413.)

The defense had previously moved to exclude this evidence under
Evidence Code section 352, but the court denied the motion. (1 RT 49.)

////

15

*Applicable Law*

Proof of prior bad acts to prove conduct on a specific occasion is generally not permitted as such evidence generally goes only to show a defendant's propensity or disposition to commit the charged crime. (Evidence Code section 1101 subd. (a); *People v. Ewolt* (1994) 7 Cal.4th 380, 393; *People v. Thompson* (1980) 27 Cal.3d 303, 316.)

However, Evidence Code section 1108 states that in a criminal prosecution in which the defendant is accused of a sexual offense, evidence of a defendant's commission of another sexual offense or offenses is not made admissible by section 1101, if the evidence is not inadmissible pursuant to Evidence Code section 352. Our Supreme Court has acknowledged that section 1108 was intended to allow juries to consider a defendant's propensity to commit sex crimes.  (*People v. Falsetta* (1999) 21 Cal.4th 903, 907.)  Under section 1108, the trier of fact may consider the defendant's commission of a prior sex crime "as evidence of the defendant's disposition to commit such crimes, and for its bearing on the probability or improbability that the defendant has been falsely or mistakenly accused of such an offense." (*Id.* at p. 912.)

One of the primary reasons the California Supreme Court found that section 1108 did not violate the due process clause of the United States Constitution, was the availability to a trial court of Evidence Code section 352

16

by which to assess the probative value of such evidence versus any prejudicial effect. (*Id.* at pp. 910-922.)

Evidence Code section 352 states that the court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time, or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.

The "prejudice" that section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence. Rather, the statute uses the word in the etymological sense of prejudging a person or cause on the basis of extraneous factors.  Evidence should be excluded as unduly prejudicial when it is of such a nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction.  In such a circumstance, the evidence is unduly prejudicial because of the likelihood the jury will use it for an illegitimate purpose. (*Vorse v. Sarasy* (1997) 53 Cal.App.4th 998, 1009.) "'Prejudice' for purposes of Evidence Code section 352 means evidence that tends to evoke an emotional bias against the defendant." (*People v. Crew* (2003) 31 Cal.4th 822, 842.)

17

*Legal Analysis*

In her argument for exclusion, trial counsel stated,

> Under 352 I am asking the court to exclude it. Once you hear that, an event from 1995, a girls who's now, I think she is 16, is going to come in and talk about. That is so damaging. It is going to be all over for Mr. DeArment once the jury finds that out. And I don't think anybody disagrees with me when I say that.
>
> So, I think therefore under 352, if the court balances its analysis, the court should keep that out.

(1 RT 50.)

The court agreed that the evidence would be "devastatingly prejudicial evidence to your defendant, to your client. No doubt about it." (1 RT 50.)

The court stated:

> But the quantum of its prejudice to your client is exceeded, in my view, by the probative value that it supplies to this jury. And I do not find that, from what I know about it, that it has any aspects that would unduly prejudice your client, and in which the prejudicial value outweighs the probative value. They are both great. And I don't find that it should be excluded under 352.

(1 RT 50.)

The trial court abused its discretion when it found the prejudicial effect and the probative value to be "great," yet declined to exclude the evidence under section 352. A court should exclude evidence of a prior crime if it bears *too much similarity* to the crimes charged. (*People v. Rowland* (1992) 4 Cal.4th 238, 259.) Hearing petitioner's former step daughter and ex-wife relate a set of

18

previous facts very similar to the allegations in this case, improperly swayed the jury to conclude that petitioner had committed the instant charges. It reduced the prosecutor's burden of proof and deprived petitioner of an unbiased jury, thereby denying him due process of law and a fair trial. (See *People v. Escobar* (2000) 82 Cal.App.4th 1085, 1095.)

> Rather than admit or exclude every sex offense a defendant commits, trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of defendant's other sex offenses, or excluding irrelevant or inflammatory details surrounding the offenses. [Citations.]

(*People v. Falsetta, supra,* 21 Cal.4th 903, 917.)

Sex crimes quite naturally evoke a strong emotional reaction in jurors. Since a primary purpose of section 352 is to protect a party from emotional bias (*People v. Branch* (2001) 91 Cal.App.4th 274, 286), evidence of a prior similar sex offense will impair the jury's ability to render a fair, unbiased verdict on the charged offense. (See *People v. Harris* (1998) 60 Cal.App.4th 727, 740-741.) Reversal of the judgment is required.

////

////

19

## V

### The trial court erred in permitting the social worker to testify as an expert on the so-called "Child Sexual Abuse Accommodation Syndrome."

#### Background

Catherine McClennan was a supervisor at the Forensic Health Department, Child Abuse Program, at Palomar Hospital. (4 RT 448.) She interviewed Katie Sue at Palomar in April of 2007. (4 RT 454.) A video tape of her interview was played for the jury. (4 RT 456.)

The Court then advised the jury as follows:

> Ladies and gentlemen, Ms. McLennan the witness who's on the stand now will be testifying today in two completely separate and distinct areas. And, in fact, in effect she will be wearing two different hats. First of all, she has now testified about her interview with Katie Sue Hayes at Palomar Hospital. Second, she will now be testifying, as I understand it, about child abuse disclosure patterns and suggestibility.

> Ms. McLennan's expert testimony in this area, is not evidence that Mr. DeArment committed any of the crimes charged against Katie Sue. You may consider this evidence only in deciding whether Katie Sue's conduct was or was not consistent with the conduct of someone who has been molested, in evaluating the believability of her testimony. You should not and must not conclude that because Ms. McLennan interviewed Katie Sue and has also testified as an expert, that she is giving an opinion on whether Katie Sue is telling the truth or was, in fact, molested by Mr. DeArment.

(4 RT 462-463.)

Ms. McLennan proceeded with the "expert testimony" regarding the so-called "Child Sexual Abuse Accommodation Syndrome." (4 RT 463.) She

20

addressed such areas as "delayed disclosure" (4 RT 463), a child's inability to distinguish "good" touching from "bad" (4 RT 464), "incremental disclosure" (4 RT 466), the relationship between the perpetrator and the child (4 RT 468), and suggestibility. (4 RT 469.)

*Applicable Law*

The theory of CSAAS was first described by Dr. Roland Summit in an article he published in 1983. (*People v. Bowker* (1988) 203 Cal.App.3d 385, 389, fn. 3.) CSAAS is a therapeutic tool that describes behaviors found in sexually abused children. (*Id.* at p. 389.) It is used in the therapy and treatment of sexually abused children. (*Id.* at p. 392, fn. 8; *In re Sara M.* (1987) 194 Cal.App.3d 585, 593.) The syndrome describes five steps — secrecy, helplessness, accommodation, disclosure and retraction. (*People v. Patino* (1994) 26 Cal.App.4th 1737, 1742; and RT 2275 *et seq.*) Not every child who has been sexually abused will display all five behaviors, and the fact that all five are not present does not mean the child has not been abused. (*Ibid.*) The syndrome usually applies where the molester is a relative or friend of the child, but it also can apply to a stranger or someone who has known the child only briefly. (*Ibid.*)

Evidence of CSAAS is not admissible to prove that the alleged victim has in fact been sexually abused. (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1300;

21

*People v. Patino, supra*, 26 Cal.App.4th at p. 1744; *People v. Gilbert* (1992) 5

Cal.App.4th 1372, 1383; *People v. Bowker, supra*, 203 Cal.App.3d at p. 393.)

Instead, it is admissible to rehabilitate the credibility of the alleged victim when

the defendant suggests that the child's conduct, such as delay in reporting the

abuse, is inconsistent with the child's testimony claiming that sexual abuse has

occurred. (*People v. McAlpin, supra*, 53 Cal.3d at p. 1300; *People v. Patino,*

*supra*, 26 Cal.App.4th at p. 1744.)  The theory for the admission of the evidence

for this purpose is that expert testimony is needed to disabuse jurors of

commonly held misconceptions about child sexual abuse through rebuttal

testimony from an expert.  (*People v. McAlpin, supra*, 53 Cal.3d at p. 1301.)

Evidence of CAAS also can be adduced during the prosecution's case-in-

chief if an issue has been raised about the victim's credibility such as during

cross-examination.  (*People v. Patino, supra*, 26 Cal.App.4th at p. 1745; *People*

*v. Housley* (1992) 6 Cal.App.4th 947, 956; *People v. Bergschneider* (1989) 211

Cal.App.3d 144, 159-160; *People v. Sanchez* (1989) 208 Cal.App.3d 721, 735-

736.)  CSAAS evidence must, however, be addressed to a specific myth or

misconception suggested by the evidence.  (*People v. Housley, supra,* 6

Cal.App.4th at p. 985; *People v. Harlan* (1990) 222 Cal.App.3d 439, 449-450;

*People v. Stark* (1989) 213 Cal.App.3d 107, 116; *People v. Bowker, supra*, 203

Cal.App.3d at pp. 393-394.)  Such evidence also should be limited to testimony

concerning the behavior of sexually abused children as a class and should avoid testimony which recites the facts of the case or obviously similar facts. (*People v. Gilbert, supra,* 5 Cal.App.4th at p. 1384; *People v. Stark, supra*, 213 Cal.App.3d at pp. 115-116.) The expert is not permitted to testify that based on CSAAS, the victim is credible because he or she manifests the characteristics generally exhibited by sexually abused children. (*People v. Bowker, supra*, 203 Cal.App.3d at p. 391.)

In an effort to reduce the danger that the jury will use CSAAS evidence on the issue of whether the victim's allegations of sexual abuse are true, CALJIC No. 10.64 instructs the jury that the evidence is not to be considered for this purpose and is to be used only for the limited purpose of showing that the alleged victim's reactions are not inconsistent with his or her having been molested.

### Legal Analysis

It is petitioner's contention that CSAAS evidence should be held inadmissible in California for all purposes, and that Ms. McLennan should not have been permitted to give the expert testimony. The admission of such evidence violates the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and the analogous provisions of the California Constitution. (Calif. Const., art. I, sections 1, 7, 15 and 16.) The trial court deprived

23

petitioner of an unbiased jury determination by admitting highly prejudicial evidence regarding the reliability of the accounts of Katie Sue, in spite of the many significant inconsistencies and common sense violations in her testimony. Admission of this evidence also violated petitioner's federal due process right to a fair trial, to present a defense, a trial free from improper reductions of the prosecutor's burden of proof, and a reliable and non-arbitrary determination of guilt in violation of petitioner's rights under the above federal and state constitutions.

These violations occur because the evidence at issue cannot possibly be limited to the description of myths surrounding abuse. Necessarily, Katie Sue's behavior would fit CSAAS since the syndrome has *no fixed characteristics and every conceivable behavior fits the syndrome,* e.g., immediate disclosure and delayed disclosure, retraction and no retraction. Therefore, the jury could not avoid using the syndrome to support whatever version of events Katie Sue provided. Because of the amorphous and indefinite characteristics of the syndrome, the jury invariably used the evidence against petitioner. In spite of the particular evidence in a given case, such evidence will always support a conviction.

Petitioner further contends that even within the established legal parameters of currently acceptable CSAAS expert testimony, the court here

24

allowed the prosecution to improperly bolster Katie Sue's credibility.  First, Ms. McLennan was allowed to present testimony, the only effect of which was to bolster Katie Sue's statements regardless of the behaviors she described, by suggesting that Katie Sue's behavior coincided with the behaviors of other sexually abused children.  To prevent the use of such one-sided and guilt-directed evidence, petitioner asks that California adopt the rule found in three other states of excluding CSAAS evidence entirely.

California courts have recognized that although CSAAS evidence is admissible for some purposes, there are inherent problems with this testimony. For example, although CSAAS evidence purports to disabuse the jury of commonly held misconceptions which may undermine the credibility of the alleged victim, it has been recognized that "[t]he particular aspects of CSAAS are as consistent with false testimony as with true testimony." (*People v. Patino, supra*, 26 Cal.App.4th at p. 1744.)  This is undoubtedly true.  An alleged victim may fail to report sexual abuse because there has been no sexual abuse, rather than for reasons consistent with sexual abuse.  Similarly, an alleged victim may retract an allegation of sexual abuse because the allegation was false rather than for reasons consistent with sexual abuse. It is hard to see how evidence can be adduced to rehabilitate the credibility of the victim when that evidence explains phenomena that are consistent with false testimony.

25

Also, there is a danger that CSAAS evidence may have been misunderstood or misapplied by the jury because the question of whether Katie Sue's behavior was typical of sexual abuse victims is closely related to the ultimate question of whether sexual abuse actually occurred. (*People v. Housley, supra,* 6 Cal.App.4th at p. 958.) A jury easily can misconstrue CSAAS evidence, which comes from someone who is recognized as an expert in the field of child abuse, as corroboration of the victim's claims. (*Ibid.*) Although the court which made these observations believed that a limiting instruction obviates the problem (*Id.* at pp. 958-959), the instruction walks a fine line since it allows the use of the testimony to corroborate the credibility of a victim who has claimed to have been molested and therefore adds to the evidence from which the jury can conclude that the alleged molestation has occurred. And this is especially true here as Ms. McLennan, the prosecution's "expert" also testified to having interviewed Katie Sue about the events underlying the present charges.

Courts from other jurisdictions have highlighted the problems and dilemmas of using CSAAS evidence. As one court put it:

> There is a serious problem with the accommodation syndrome in that in some instances it seeks to show why the behavior of alleged abused child is the same as, not different from, the behavior of a child who has never been abused. The testimony may seek to explain why the child acted normally. The fact the child acted normally is not evidence of abuse.

26

> The problem with this type of evidence is it may incorrectly be used
> as evidence of abuse.  There is a very fine line between an opinion that is
> helpful to a jury and an opinion that merely conveys a conclusion
> concerning the defendant's guilt.

(*State v. Stribley* (Iowa App. 1995) 532 N.W.2d 170, 174.)

Although California courts have ruled that CSAAS is admissible despite

the problems with the use of such evidence, not all courts have agreed.  As the

Ninth Circuit observed: "CSAAS has been examined by several courts in the

context of criminal prosecutions and found wanting." (*Franklin v. Henry* (9th

Cir. 1997) 122 F.3d 1270, 1273, overruled on other grounds in *Payton v.*

*Woodford*, 299 F.3d  815 (9th Cir. 2002) (en banc).)

In Pennsylvania, CSAAS evidence is inadmissible for all purposes.  The

reasons for the rule are explained at length in a Pennsylvania Supreme Court

decision.  (*Commonwealth v. Dunkle* (1992) 529 Pa. 168 [602 A.2d 830].)

From this observation, made without analysis or recognition of the

significant body of contrary authority, the appellate courts in California created

— virtually from whole cloth – the principle that CSAAS testimony was

admissible in California.

Given the argument and authorities cited above, petitioner respectfully

urges this court to break with its sister appellate courts and find that the trial

court erred, as a matter of law, in admitting the testimony of Catherine

27

McLennan which was utilized to unfairly and improperly bolster the credibility of the prosecution's complaining minor witness.

*Ms. McLennan rendered improper expert testimony.*

As a general proposition, a witness is barred from offering an opinion regarding the defendant's guilt or innocence. (*People v. Torres* (1995) 33 Cal.App.4th 37, 46-47.)  Thus, even an expert is precluded from testifying that a witness has been truthful. (*People v. Johnson* (1993) 19 Cal.App.4th 778, 786-791.)  When an expert testifies that certain behaviors [engaged in by the child complainant] are "consistent" with having been sexually molested, the testimony is a thinly-veiled opinion that the child is a credible witness.  Indeed, the entire CSAAS proceeds on the assumption that the child has been molested and is telling the truth.  Viewed from this perspective, a CSAAS expert should not be allowed to offer conclusions which impliedly advise the jury that the child is credible. (See *People v. Roscoe* (1985) 168 Cal.App.3d 1093, 1099-1100 [the trial court erred in allowing expert testimony that the complainant was a victim of child molestation].)

By "wearing two hats," as both interviewer of Katie Sue and CSAAS "expert," Ms. McLennan's testimony was undoubtedly given undue influence by the jury.  In spite of instructions to the contrary, the jury could not help but conclude that Ms. McLennan personally believed Katie Sue's allegations.

28

*The error was prejudicial.*

Given the constitutional nature of the error here, it must first be

subjected to the harmless beyond a reasonable doubt standard set forth in

*Chapman v. California* (1967) 386 U.S. 18, 22.  Under state law, the erroneous

admission of CSAAS evidence requires reversal if a reasonable probability exists

that had the evidence been excluded the result would have been different.

(*People v. Jeff* (1988) 204 Cal.App.3d 309, 339; *People v. Bowker, supra*, 203

Cal.App.3d at p. 395.)

Katie Sue's credibility was the primary issue at trial.  The defense

challenged her credibility with numerous inconsistencies and contradictions,

asserting that the violations never occurred, and that petitioner was never alone

with Katie Sue.  The  CSAAS evidence bolstered her testimony by suggesting

that her behavior conformed to the behavior of sexually abused minors.

The CSAAS evidence necessarily would have been given great weight. It

came from a witness who, unlike the minor, had no stake in the outcome of the

case.  That witness, moreover, had impressive professional and academic

credentials and gave testimony on what she represented as being scientifically-

supported behaviors of sexually abused children.  That the evidence came from a

disinterested source and concerned scientifically-based observations, necessarily

gave it great weight in the jury's eyes, especially where it came from someone

who had personally interviewed Katie Sue.

Our Supreme Court has noted: "Where the evidence, though sufficient to sustain the verdict, is extremely close, any substantial error tending to discredit the defense, or to corroborate the prosecution, must be considered as prejudicial." (*People v. Gonzales* (1967) 66 Cal.2d 482, 493-494, citation and internal quotation marks omitted.)  This principle has been applied to cases, which are viewed as being close because they turn "primarily upon the respective credibility of two principal witnesses." (*People v. St. Andrew* (1980) 101 Cal.App.3d 450, 465.)

This principle apples here and requires reversal.  The admission of the CSAAS evidence corroborated the prosecution's case by suggesting that Katie Sue's behavior was consistent with that of children who had been sexually abused.  This enhanced her credibility and provided the jury with a way to credit the accusations of sexual abuse.  The error is prejudicial, and the judgment must be reversed.

## Conclusion

Susan Hayes may have believed that petitioner improperly touched Katie Sue, especially after discovering that he had a prior conviction.  She was livid at the prospect of such an occurrence.  While the anger of the parents is understandable, there is no competent evidence to support the claims and this is

the very situation that requires vigilance by the criminal justice system to reach a reliable verdict.

Every decent person abhors the molestation of innocent children, but the prospect of convicting innocent people and sentencing them to life in prison is worse.

For all of the reasons argued above, the convictions must be reversed.

Dated: 5/29/05

Respectfully submitted,

*Patrick Morgan Ford*
PATRICK MORGAN FORD,
Attorney for Petitioner
RICHARD PETER DEARMENT

## Certificate of Compliance

I, Patrick Morgan Ford, hereby certify that the within brief consists of 6,861 words, as determined by the word count feature of the word processing program utilized in this case.

Dated: 5/25/09

*Patrick Morgan Ford*
PATRICK MORGAN FORD

31

*People v. Richard Peter DeArment*                    CASE NO. D052188

## DECLARATION OF SERVICE

I, Esther F. Rowe, say:  I am a citizen of the United States, over 18 years of age, and employed in the County of San Diego, California, in which county the within-mentioned delivery occurred, and not a party to the subject case.  My business address is 1901 First Avenue, Suite 400, San Diego, CA  92101.  I served a *Petition for Review*, of which a true and correct copy of the document filed in the case is affixed, by placing a copy thereof in a separate envelope for each addressee respectively as follows:

Court of Appeal
Fourth Appellate District
Division One
750 "B" Street, Suite 300
San Diego, CA  92101

Office of the Attorney General
P.O. Box 85266
San Diego, CA  92186-5266

District Attorney
330 W. Broadway
Eleventh Floor
San Diego, CA  92101

Appellate Defenders, Inc.
555 W. Beech St.,  Suite 300
San Diego, CA  92101

Honorable William J. McGrath,
Judge San Diego County Courthouse
220 W. Broadway
San Diego, CA  92101

Richard Peter DeArment, #F98866
A5-136
P.O. Box 409020
Ione, CA  95640

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on May 29, 2009,  at San Diego, California.

*Esther Rowe*
_____
Esther F. Rowe

Court of Appeal Opinion

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

FILED
Stephen M. Kelly, Clerk

APR 28 2009

Court of Appeal Fourth District

|  |  |
|---|---|
| THE PEOPLE, | D052188 |
| Plaintiff and Respondent, | |
| v. | |
| RICHARD PETER DEARMENT, | (Super. Ct. No. SCE270987) |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, William J. McGrath, Judge. Affirmed.

A jury convicted Richard Peter Dearment of two counts of committing a lewd act on a child (Pen. Code,[1] § 288, subd. (a)) and found true allegations attached to each count he had committed an offense described in section 667.61, subdivision (c) against more than one victim (§ 667.61, subds. (b), (c) & (e)). In a bifurcated proceeding, the trial court then found true that Dearment had previously committed lewd acts with a

---

[1]    All statutory references are to the Penal Code unless otherwise specified.

child, which constituted a serious felony prior (§ 667, subd. (a)(1)), two strike priors

under the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12), and priors under the

Habitual Offender law (Pen. Code, § 667.71, subd. (a)).  The court sentenced Dearment

to a total prison term of 80 years to life.

Dearment appeals, contending there was insufficient evidence to sustain his

convictions and their accompanying multiple victim enhancements, and the trial court

committed numerous instances of prejudicial error in the admission of the evidence at

trial.  Dearment specifically asserts the court erred in permitting one child victim's

mother to testify as to statements made by the child under the "fresh complaint doctrine"

and Evidence Code section 1360, in admitting the testimony of that child victim because

she was not a competent witness, in permitting the prosecution to introduce testimony of

his former stepdaughter and ex-wife to relate details of his 1995 child molest convictions,

and in permitting a social worker to testify as an expert on the so-called Child Sexual

Abuse Accommodation Syndrome (CSAAS). We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Because Dearment challenges the sufficiency of the evidence to support his two

counts of lewd and lascivious acts upon a child, we set out the facts regarding those

counts in full and in the light most favorable to the judgment.  (*People v. Snow* (2003) 30

Cal.4th 43, 66.)  In doing so, we refer to the young victims of the sexual misconduct as

"KS" and "E" and protect their identity by referring only to their family members, other

than Dearment, by their status.

2

*The Prosecution Case*

Dearment and KS's father met while working construction jobs and became close friends. Their respective families also became good friends who spent time together outside of the men's work relationship. At the time of trial in October 2007, KS was five and a half years old and Dearment's daughter E was about four years old. KS and E often played together and became fast friends.

At some point near the end of 2006, when KS's father approached Dearment with a proposal to go into business together, Dearment revealed to him and KS's mother that he had previously been convicted of child molestation. Dearment explained that although he was not guilty, he had pled guilty to sexually assaulting his former stepdaughter because he had a bad attorney who railroaded him into pleading in the face of accusations by his ex-wife as he could not afford a better attorney. Both KS's mother and father believed Dearment because they were such good friends and they trusted him.

In February 2007, while KS's mother was putting lotion on KS after her nightly bath, she spilled some lotion near the girl's genital area. When KS's mother said she needed to clean it up so it would not get on her private part, KS responded in a matter of fact way, "why, Mama, [Dearment] does." KS then showed her mother where Dearment had touched her by spreading her legs and tickling her vagina. When KS's mother held her little finger out bent at a 90-degree angle and said "aren't boys' pee pees funny, they are these little things that you see," KS responded by holding her hands about six to eight inches apart, saying "oh, no mama. His pee pee was big." After telling KS that

3

Dearment should not have done that, KS's mother dressed KS in her pajamas, read her a story, prayed with her and put her to bed.

Afterwards, KS's mother told her husband what KS had said and talked about the matter, not knowing what to do. The next day, KS's mother spoke with her supervisor at the preschool where she worked, who advised her that Child Protective Services (CPS) needed to be contacted. CPS was contacted later that day and arranged to have a social worker immediately visit the family.

CPS social worker Mary Horning, who was referred the case, arrived at KS's family home around 3:00 p.m. that afternoon. After briefly talking with KS's parents, who told her the basic details of what KS had reported to mother, Horning interviewed KS alone about what had happened with Dearment. After it was established that KS knew the difference between the truth and a lie and understood spatial concepts, KS told Horning that Dearment had touched her on her private, had rubbed lotion on it, and had done the same to E. KS said these acts occurred in Dearment's and his wife's bedroom and that Dearment's "private" was "big, like a stick," and "stuck straight out."

Horning stopped the interview at this point and contacted the authorities because she believed a crime had been committed. KS's parents had also provided Horning with information that the incident with Dearment must have happened on July 3, 2005, when Dearment babysat KS while her father was in the hospital following a work accident. Before she left the home, Horning cautioned KS's parents not to initiate any conversations with KS about the allegations and that if KS brought up the subject, they should just listen and be supportive.

4

KS was next interviewed on March 1, 2007, by Laurie Fortin, a forensic interviewer at the Chadwick Center in Children's Hospital (CCH). Fortin's interview with KS, in which she claimed the incident with Dearment occurred when her father was in the hospital and she was at Dearment's house, was videotaped. Fortin also admonished KS's parents about the importance of not discussing the allegations with KS.

The CPS investigation into the molestation charges was closed according to standard protocol in March 2007 as "inconclusive" because law enforcement had not provided CPS with any information to complete the report within the 30-day limit. However, the case was reopened in April 2007 after KS disclosed to her mother that Dearment had molested her and E on another occasion. Sometime after having a meeting with the prosecutor and the prosecutor's investigator concerning the allegations, without any solicitation, KS related the second incident occurred when she was with Dearment on a "play date" during which time he played a game with her and E where he rubbed powder or lotion onto her and E's "pee pees" and his own "pee pee," and then placed his "pee pee" on her and also did the same to E. KS's mother then contacted the prosecutor and a second interview of KS was set up, this time at Palomar Hospital with forensic interviewer Catherine McLennan.

Dearment was subsequently charged with molesting KS and E on two different occasions. At his preliminary hearing on July 11, 2007, KS testified she did not remember Dearment touching her and frequently answered "I don't know" to questions, essentially freezing up and being unable to express anything about what had happened with Dearment. After she was outside the hearing, both her parents confronted KS in the

5

hallway and scolded her for not testifying to what she remembered and for not telling the truth.

Before trial, KS attended therapy sessions and participated in the "kids in court" program designed to familiarize children and their parents about courtroom procedure and to help them feel comfortable in such setting. The program did not permit the children to talk about their specific cases, but only encouraged them to tell the truth.

In addition to the above evidence being presented at trial, KS's father testified about a recorded "pretext" telephone call he had made to Dearment at the request of the prosecution in an attempt to get Dearment to admit he had molested KS. Dearment, however, did not admit any wrongdoing and only became angry. KS's father and mother also testified that they recalled an occasion before July 2007 when Dearment had volunteered to babysit KS while they went on a date. On that occasion, they dropped KS off with Dearment at his house for about three hours. Regarding the hallway incident with KS after the preliminary hearing, each parent testified that they had been frustrated by KS not answering questions as she had before to the social worker and forensic interviewers, but that they regretted doing so. KS's mother conceded she had told the prosecutor's detective at one of the court visits that she had reminded KS not to forget to talk about E when she talked about the incidents with Dearment.

KS testified at trial, explaining she knew the difference between truth and a lie and answering general questions showing she cognitively understood the difference between questions she could answer and those she could not. KS recalled an incident when she was at Dearment's with "baby" E when no one else was there. At that time, they were in

Dearment's and his wife's bedroom and she and E took turns going in a circle on the bed, stopping and pulling down their pants, while Dearment stood by the end of the bed with his pants down and put his "private part" on their private parts. He also put his hand on their private parts. KS described Dearment's private as being big.

KS testified it was Dearment's idea to play this game and he told her to keep it a secret. She said this game occurred when her daddy was hurt and she stayed with Dearment, had dinner and then Dearment, not his wife, gave her and E a bath. KS also recalled being at Dearment's home another time but could not remember exactly when that was. On cross-examination, KS said her mother had talked to her about the incident "quite a lot" and had told her Dearment was a "bad man."

After KS had left the courtroom, the court noted for the record that "there was about a five-second pause from [KS] when she was asked if she was telling the truth about what happened. . . ." The court also noted that KS's answers were not immediate-- "there were pauses of one, two, maybe three seconds, possibly at the very beginning pauses of five seconds, as well, if not more."

The two forensic interviewers, Fortin and McLennan, testified about their respective videotaped interviews with KS during the investigation and Fortin also explained the problems of suggestive and contaminating questions to children in general. The video tapes of the two interviews were played for the jury. McLennan then testified in general as an expert on CSAAS.

Dearment's ex-wife and former stepdaughter also testified at trial concerning the 1995 molestation of the stepdaughter when she was four years old. On one occasion

7

when the stepdaughter had crawled into their bed and was sleeping between Dearment
and his ex-wife, the ex-wife had awakened to notice the covers wiggling. As she pulled
her daughter closer to her, Dearment shoved her away from him and jumped out of bed.
When she then asked her daughter if Dearment had touched her, the child said "yes," he
had rubbed her private parts. When Dearment's ex-wife confronted him about the matter,
he denied it and when he denied it again in front of the child, his stepdaughter said, "you
really do. You really do." Dearment's ex-wife then told him to leave the house and took
her daughter to her parents.

Later, when Dearment's ex-wife returned home, Dearment admitted to her he had
rubbed her daughter's vaginal area, but claimed it was the ex-wife's fault. Subsequently,
his ex-wife placed a "controlled" telephone call to Dearment, which was surreptitiously
recorded by investigating officers and during which he admitted he had rubbed her
daughter's vagina a dozen times. A redacted portion of Dearment's recorded admission
was played for the jury.

The stepdaughter, who was 16 years old at the time of trial, testified about the
prior molestation, saying that Dearment had repeatedly rubbed her vagina when she
crawled into bed with him and her mother.

*The Defense Case*

Dearment, his wife, his wife's teenage daughter, and a good friend of his wife all
testified on his behalf. Dearment acknowledged having two prior child molestation
convictions, but denied he ever rubbed either KS's or E's vaginal areas with or without
lotion. Although KS had stayed over at his house on July 3, 2006, when her dad was in

8

the hospital, Dearment said his wife had bathed the two young girls and had put them to bed that night. Dearment denied that KS had ever spent the night at his house at any other time or that he had ever been with her alone. He denied ever babysitting KS so her parents could go on a date or ever touching KS or E inappropriately.

Dearment's wife testified she had been home the night KS's dad was injured in an accident and Dearment picked up KS at the hospital and brought her to their house. She was the one who gave KS and E their baths that night. That was the only time KS had spent the night at their house and Dearment was never alone with the girls that evening. Nor did she and Dearment ever babysit KS so her parents could go on a date. On cross-examination, however, Dearment's wife conceded that she and her older daughter had gone on a weeklong church retreat sometime during the summer of 2006, leaving him home with E. Dearment's current stepdaughter's testimony corroborated that of her mother's.

A good friend of Dearment's wife, who had accompanied her to the preliminary hearing in this case, testified about seeing KS's parents scolding KS in the hallway outside the courtroom and saw KS's mother angrily pointing her finger in KS's face.

A stipulation was read to the jury that KS had testified at the preliminary hearing she had never seen Dearment's "privates."

9

## DISCUSSION

### I

### *SUFFICIENCY OF THE EVIDENCE*

Dearment contends there was insufficient admissible evidence to support his convictions for lewd acts upon a child under section 288, subdivision (a) and the multiple victim findings under section 667.61, subdivision (e). He specifically argues that KS's testimony and her inability to recall and relate certain details regarding events when she was three or four years old, in light of the numerous pauses between questions and answers and inconsistencies in the evidence concerning his alleged conduct, especially in her earlier preliminary hearing testimony and statements to others, provided no credible evidence from which a rational trier of fact could have found beyond a reasonable doubt he was guilty as charged. We conclude there was sufficient evidence to support Dearment's convictions under section 288, subdivision (a) and the multiple enhancement findings.

When the sufficiency of the evidence is challenged, we " 'review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence--that is, evidence that is reasonable, credible, and of solid value-- from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Hale* (1999) 75 Cal.App.4th 94, 105 (*Hale*) quoting *People v. Thomas* (1992) 2 Cal. 4th 489, 514.) In doing so, we " 'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citations.]" (*People v. Johnson* (1980) 26 Cal.3d 557, 576-577.) " '[I]t is the *jury*, not

the appellate court, which must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.]  Therefore, an appellate court may not substitute its judgment for that of the jury.' "  (*People v. Sanchez* (1998) 62 Cal.App.4th 460, 468, quoting *People v. Ceja* (1993) 4 Cal.4th 1134, 1139.)  We will not reverse a conviction on the ground of insufficient evidence unless it clearly is shown that "on no hypothesis whatever is there sufficient substantial evidence to support the verdict . . . ."  (*People v. Hicks* (1982) 128 Cal.App.3d 423, 429.)

A defendant violates section 288, subdivision (a),[2] when he or she willfully commits any lewd or lascivious act upon a child under the age of 14 years with the intent of arousing or gratifying the lust or desires of either the perpetrator or the child.  "Nothing in [the language of section 288, subdivision (a)] restricts the manner in which such contact can occur or requires that specific or intimate body parts be touched.  Rather, a touching of 'any part' of the victim's body is specifically prohibited."  (*People v. Martinez* (1995) 11 Cal.4th 434, 442 (*Martinez*).)  Moreover, "the 'gist' of the offense has always been the defendant's intent to sexually exploit a child, not the nature of the offending act.  [Citation.]"  (*Id.* at p. 444.)

---

[2]  Section 288, subdivision (a), provides in full:  "Any person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years."

Our review for substantial evidence is not limited to the circumstances of the
touching, which are "highly relevant" (*Martinez, supra*, 11 Cal.4th at p. 452), but extends
to all the circumstances. (*Id.* at p. 445.) "Because intent can seldom be proved by direct
evidence, it may be inferred from the circumstances." (*In re Jerry M.* (1997) 59
Cal.App.4th 289, 299.) Relevant circumstances for assessing the required specific intent
include the nature of the charged act, extrajudicial statements, "other acts of lewd conduct
admitted or charged in the case" (see *People v. Ewoldt* (1994) 7 Cal.4th 380, 402, fn. 6;
*Martinez, supra*, at pp. 445, 452), the relationship of the parties, the age of the defendant
(*In re Jerry M., supra*, 59 Cal.App.4th at pp. 299-300), "and any coercion, bribery, or
deceit used to obtain the victim's cooperation or to avoid detection." (*Martinez, supra*, 11
Cal.4th at p. 445.)

In order to find true a multiple victim allegation, the jury must additionally
determine that the People have proved beyond a reasonable doubt that the lewd or
lascivious acts were committed against more than one victim.

Here, Dearment does not specifically contend any of the elements for his crimes or
enhancements is unsupported, but rather only challenges in general those convictions and
findings, arguing KS's testimony and her statements to others could not provide evidence
that was "reasonable, credible and of solid value" to support them. He asserts it is not
reasonable due to her young age that KS would be able to recall and relate events that
allegedly occurred when she was less than five years old. Dearment, however, fails to
appreciate that the jury had before it other testimony regarding KS's statements about the
molest of her and E in addition to that of KS's. Her mother testified about KS's report of

12

the molests while she was putting lotion on her; the social worker testified about KS's statements of the molest by Dearment after the mother reported the suspected molests; and two videotaped forensic interviews revealing KS's statements and conduct were played for the jury.  In such evidence KS referred to inappropriate touchings by Dearment that happened at least two times to both her and E.  The inconsistencies in KS's various statements and the other evidence were fully argued to the jury.  Further, the jury had before it Dearment's, his wife's and stepdaughter's testimony as well as that of a friend of his wife's and various stipulations concerning KS's preliminary hearing testimony.  The credibility of all the evidence was thoroughly argued to the jury.  That the jury believed KS and E were touched inappropriately at least one time each is supported by the above evidence.  We do not reweigh the evidence.

Moreover, it is reasonable to infer from the evidence of Dearment's prior convictions of lewd conduct upon a child in 1995 and his taped telephone admission of such earlier vaginal touchings of his stepdaughter, that he would touch KS and E for purposes of his own sexual gratification.  Because the requisite specific intent for section 288, subdivision (a) is reasonably inferable under these circumstances, and the evidence supports at least one incident of inappropriate touchings upon two victims by Dearment, we conclude there is substantial evidence to support his convictions of lewd and lascivious conduct as to KS in count 1, E in count 2 and the multiple victim findings for each count.

13

II.

*"FRESH COMPLAINT DOCTRINE" AND EVIDENCE CODE SECTION 1360*

During in limine motions, the trial court addressed the prosecutor's motion to admit KS's mother's recitation of the child's "revelation of these events" under the fresh complaint doctrine and Evidence Code section 1360,[3] as well as admitting KS's statements made to the social worker and those in the forensic interviews regarding the details of the alleged molest under Evidence Code section 1360.

Dearment's counsel objected to the mother's statements coming in as fresh complaints because of the 11-month delay after the purported molest, arguing it was stale rather than fresh, and objected to any statements coming in under Evidence Code section 1360 on hearsay and right to confrontation grounds. Counsel also thought the statements made to the mother did not manifest sufficient indicia of reliability to be admitted under Evidence Code section 1360.

---

[3]     Evidence Code section 1360 provides in pertinent part: "(a) In a criminal prosecution where the victim is a minor, a statement made by the victim when under the age of 12 describing any act of child abuse or neglect performed with or on the child by another, or describing any attempted act of child abuse or neglect with or on the child by another, is not made inadmissible by the hearsay rule if all of the following apply: [¶] (1) The statement is not otherwise admissible by statute or court rule. [¶] (2) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability. [¶] (3) The child either: [¶] (A) Testifies at the proceedings. [¶] (B) Is unavailable as a witness, in which case the statement may be admitted only if there is evidence of the child abuse or neglect that corroborates the statement made by the child. [¶] (b) A statement may not be admitted under this section unless the proponent of the statement makes known to the adverse party the intention to offer the statement and the particulars of the statement sufficiently in advance of the proceedings in order to provide the adverse party with a fair opportunity to prepare to meet the statement."

14

The prosecutor disagreed, arguing with regard to the mother's testimony, the facts of this case were very similar to another case where the fresh complaint doctrine was found to apply and the circumstances of how the disclosure was made to her by KS showed the reliability of the statements.  The prosecutor apprised the court she was willing to have an Evidence Code section 402 hearing on the issue if the court desired one.

The trial judge agreed with the prosecutor, finding that the case she cited was right on point concerning the delayed disclosure and stating "there was a similar triggering event, from what I know about this case, and that is that mom was putting lotion on [KS's] privates, or that they got on the privates indirectly or by mistake, and [KS] had the same 'ah-ha moment' when she said, 'hey, [Dearment] did this to me as well.  He put stuff there, similar stuff on my privates.'  [¶] And that triggering event of mom doing it, making her remember what [Dearment] did, I think fits squarely on all fours with the fresh complaint doctrine.  [¶] Moreover, in the matter of fairness, I think the jury has a right to know that [KS's] complaint did not just come out of thin air seven or eight months after the event, it came out of a triggering event that made her remember it, and made her realize this has been done before to her."  The court therefore overruled Dearment's objections and ruled mother's testimony regarding KS telling her about the incident seven or eight months earlier was admissible within the fresh complaint doctrine. It also found admissible KS's statements to the social worker and forensic interviewers, as well as to her mother regarding the details of the molest, under Evidence Code section

15

1360, noting that its concerns regarding confrontation had been obviated because KS was going to be a witness.

Subsequently, just before opening statements at trial, defense counsel raised the issue of a new disclosure by KS to her mother for which the defense had not been properly noticed under Evidence Code section 1360.  Counsel explained that she had received notice only of the statements KS had originally made to her mother, to the social worker and the two forensic interviewers, but had not received notice of some recent statements revealed to the prosecution in September 2007 when KS was brought to court for a practice run.  Apparently, the prosecutor "had taped the mother and the detective and her own conversations while they were getting ready to go into court to do the practice run with the child and [the mother] said that [KS] had been talking to her about [Dearment] making her go around and around in a circle [and] she didn't want to do it, but she didn't want to get in trouble."  When mother asked her what she meant, KS "told her that [Dearment] would stand at the end of the bed and they would go around and around."  When mother asked her to show her what she meant, KS stood up and demonstrated going around in a circle, which she said she did until Dearment made her stop and pull down her underwear.  KS also said she was behind E when Dearment had them do this and that it "happened four times on two different play dates."  Defense counsel represented that she had received the information a week before trial and was objecting to its admission under Evidence Code section 1360 due to untimely notice and the lack of sufficient indicia of reliability.

16

Defense counsel noted that she had not requested an Evidence Code section 402 hearing on the reliability of the earlier statements KS made to the social work or to mother on the initial disclosure "because . . . that had been dealt with early on and those statements would be reliable under [Evidence Code section] 1360. But as to this recent revelation, revealed on September 24th, before trial, I think it is completely different."

The prosecutor conceded he had made the mistake of lumping the recent disclosure in with the others made in February and April 2007, the notice was untimely because there was no way to provide earlier notice due to the disclosure happening so close to the start of trial and agreed there should be an Evidence Code section 402 hearing even though he thought the statements were reliable under the circumstances. The court ruled that the prosecutor would be precluded from referring to the new disclosure in his opening statement unless they were able to hold the evidentiary hearing on those statements before that time. It also overruled defense counsel's renewed objection to any statements by KS offered under Evidence Code section 1360 from being admitted on hearsay and due process grounds. In doing so, the court noted it would consider striking KS's statements to others if KS did not testify in this trial or if she froze up and did not remember anything.

After opening statements, the trial court noted that in an unreported sidebar conference, the prosecutor had advised the court that he had "elected to not present any evidence regarding the late discovered, . . . 'circle game.' And therefore, the [Evidence Code section] 402 hearing was not necessary, and for the record, that's why we did not

have one."  When KS's mother then testified, no questions were asked of her regarding

KS's late disclosure in September 2007.

On appeal, although Dearment concedes the nature of KS's allegations to her

mother were admissible under the fresh complaint doctrine, he contends the trial court

committed error by permitting KS's mother to testify to the details of the alleged

molestations (i.e., "he used lotion or powder, he made me play a game, he put his 'pee

pee' against mine, her description of [his] private area, etc.") under Evidence Code

section 1360.  Dearment specifically argues such details were inadmissible hearsay and

because the trial court did not hold an Evidence Code section 402 hearing to determine

their reliability they were not admissible under Evidence Code section 1360.

Our review of the record reveals that Dearment has waived his right to complain

about the admission of KS's statements to her mother under Evidence Code section 1360

on the grounds now raised.  Dearment's counsel did not request an Evidence Code section

402 hearing on the admissibility of KS's statements to her mother.  Rather counsel

conceded that one was not necessary regarding the initial disclosures to KS's mother as

well as to the social worker and forensic interviewers because they were reliable for

purposes of Evidence Code section 1360.  Counsel only requested an evidentiary hearing

to challenge the reliability of KS's statements made to her mother in September 2007 and

those statements were then not admitted negating the necessity for such hearing.  We

therefore decline to now consider whether an Evidence Code section 402 hearing should

have been held nonetheless, as any error was invited and constitutes a waiver of the issue

on appeal. (See, e.g., *People v. Wader* (1993) 5 Cal.4th 610, 657-658; *People v. Lara* (1994) 30 Cal.App.4th 658, 673-674.)

Because the reliability of KS's statements to her mother and others was conceded and the other elements, i.e., notice and child testifying to be available for cross-examination (see *People v. Brodit* (1988) 61 Cal.App.4th 1312, 1329-1330), for admission of such statements under Evidence Code section 1360 were met and are not contested, we conclude after independently reviewing the record that the trial court did not abuse its discretion in admitting the hearsay evidence under Evidence Code section 1360. (See *Lilly v. Virginia* (1999) 527 U.S. 116, 136; *People v. Eccleston* (2001) 89 Cal.App.4th 436, 445.)

Moreover, even assuming the trial court abused its discretion in allowing KS's mother to testify under Evidence Code section 1360 to KS's statements regarding the details of Dearment molesting her, any error would be clearly harmless under any standard. KS testified at trial and was subject to cross-examination. Her mother's testimony about how KS reported being molested by Dearment was properly admitted under the fresh complaint doctrine and Dearment does not challenge the admission of KS's statements about the details of the molestations to the social worker or forensic interviewers. KS's own testimony as well as her tape recorded forensic interviews played for the jury established that she understood truth from lies and was capable of understanding the questions and tasks asked of her. Although she froze during the preliminary hearing on certain questions regarding the molestations, KS's statements at trial and to the interviewers and social worker were consistent regarding Dearment's

19

conduct in molesting her. Under these circumstances, any conceivable error in the admission of KS's statements detailing the molestations to her mother was clearly harmless beyond a reasonable doubt and on this record Dearment cannot show any probability of a different result in the absence of those statements. No prejudicial error is shown in this regard.

III

*THE COMPETENCY OF KS AND THE ADMISSION OF HER TESTIMONY*

In limine, Dearment's counsel also raised the issue of KS's competency to testify, stating she was "not sure if I am asking for an [Evidence Code section] 402, or to make sure that the foundation for competency is properly laid." Counsel thought KS probably knew the difference between the truth and lying, but was concerned with KS's ability to remember and relate due to her young age as evidenced by her freezing up at the preliminary hearing.

The court thought counsel was raising two separate issues, KS's competency to testify, which concerned the admissibility of her testimony and the ability to remember which went to the weight of her testimony. The court did not see the problem as a qualification issue, because KS had qualified to testify at the preliminary hearing and she understood the difference between telling the truth versus telling a lie.

Later, after KS and several other witnesses had testified at trial, defense counsel asked to make a record objection to KS's competency and availability to testify. Even though KS appeared to give the right answers "in terms of being competent in the sense that she knew the difference between truth and a lie[, and] appeared to [be] able [to] relay

20

and relate what had happened to her[,]" counsel was concerned with the long pauses in KS's answers and her complete failure to answer some of the prosecutor's questions until they were reworded. Counsel thus asked the court to find KS "unavailable for purposes of this hearing."

In denying such request, the trial judge specifically stated:

> "[KS] was far more halting and seemingly, from the court's view, intimidated and embarrassed at parts of her testimony, then once she got going. . . , her answers were responsive, if not almost immediate. I believe that she responded to each attorney's questions, especially after she got over her nerves, I think, appropriately and directly. [¶] And it's true that her responses were somewhat altered and slow, but they made sense. And they were appropriate responses to the questions asked. And there is no basis in the court's view to find her as an unavailable witness. So that objection will be overruled."

On appeal, Dearment contends he was denied a fair trial when the trial court permitted KS to testify without holding a hearing to determine her competency and then failed to exercise its discretion "in making a determination as to [KS's] competency in the face of numerous indicators that she may not be capable of telling the truth." In making his arguments, Dearment relies on general authority and references the preliminary hearing where KS had responded that she forgot many things, evidence that she was scolded by her parents after the preliminary hearing, and purported inconsistencies in her trial testimony, to assert KS's ability to accurately recall events was questionable rendering her incompetent to testify. Dearment's competency claims have no merit.

Not only did Dearment's counsel not specifically request an Evidence Code section 402 hearing on the matter, counsel also conceded that KS knew the difference between telling the truth and a lie. Thus, as the trial court correctly concluded, no

21

evidentiary hearing was necessary because Dearment's concerns went to the weight of KS's testimony and not to their admissibility or to whether she was competent to testify, a matter which had already been determined before she testified at the preliminary hearing in this case. In addition, when counsel brought the matter up a second time after KS had already testified, the court specifically found that despite some hesitation on certain questions, KS had answered all questions appropriately, which essentially showed she understood them and expressed her understanding of the duty to tell the truth. (Evid. Code, § 701, subd. (a).) The record supports the court's findings. Dearment has simply failed to meet his burden of proving that the trial court abused its discretion by allowing KS to testify or by failing to find her incompetent or unavailable after she testified. (*People v. Dennis* (1998) 17 Cal.4th 468, 525.)

To the extent Dearment suggests that KS's testimony was contaminated by her parents after the preliminary hearing, such concern went to the issue of KS's credibility and not to her competency to testify. Similarly, Dearment's concerns regarding the pauses in KS's testimony, her lack of memory of some details and the purported inconsistencies in her testimony also went to her credibility, which was a separate issue from her competence to testify. (*People v. Lewis* (2001) 26 Cal.4th 334, 356.) The trial court correctly recognized this difference and permitted KS to testify. No abuse of discretion is shown.

## IV

### *EVIDENCE CODE SECTION 1108*

In limine, after noting it was inclined to allow the prosecutor's opposed request under Evidence Code section 1108 to present evidence concerning Dearment's "prior involvement, which resulted in a guilty plea of child sexual offenses involving . . . his own [step]daughter back in 1995, . . . subject to knowing how it's going to be presented," the prosecutor represented that she planned to have the actual victim testify as well as to play "a telephone conversation [to his ex-wife] that was surreptitiously recorded in which [Dearment] made some admissions that formed the basis for his criminal prosecution some 12 years ago as well."

Defense counsel objected to the admission of such evidence under Evidence Code section 352, arguing that it was too inflammatory, concerned evidence that was 12 years old, the age of the child victim was too similar to the instant case, the crime was too dissimilar because the child victim in this case was "outside [her] home," and it would "be all over for Mr. Dearment once the jury finds . . . out [about the earlier sexual misconduct]."

The trial judge overruled the Evidence Code section 352 objection, stating:

> "You know, [Evidence Code section] 352 talks about undue
> prejudice. And I am not going to sugarcoat it. This is devastatingly
> prejudicial evidence to [Dearment]. No doubt about it. [¶] If there
> was no history of this, then he, no doubt, would be able to paint a
> much better picture of what did or did not happen here. [¶] But it's
> the law. The law says it will be excluded only if [Evidence Code
> section] 352, under discretion of the judge, thinks that the prejudicial
> effect is so overwhelming beyond its probative value that it
> outweighs it. [¶] And it's devastating evidence. It's strong evidence.

23

It's prejudicial evidence, as is almost all evidence that the prosecution presents against a defendant. [¶] But the quantum of its prejudice to your client is exceeded, in my view, by the probative value that it supplies to this jury. And I do not find that . . . it has any aspects that would unduly prejudice your client, and in which the prejudicial value outweighs the probative value. They are both great. And I don't find that it should be excluded under [Evidence Code section 352. [¶] . . . This case seems to be a model under which the drafters of Evidence Code section 1108 were operating. It's going to be allowed."

The court then turned to the issue of how such evidence would be presented. Concerned about the prosecutor "piling it on," the court noted it would allow the victim to testify, allow the parties to stipulate to having the fact of the earlier conviction be presented so the jury would not punish Dearment for his past conduct, and allow the prosecutor to either bring in evidence of the controlled call or the police officer's statement regarding Dearment's earlier admission, but not both. The court also noted it thought the evidence was also admissible under Evidence Code section 1101, subdivision (b) to show absence of mistake and Dearment's intent.

Subsequently, before the Evidence Code section 1108 evidence was presented at trial, the court granted defense counsel's request to further limit such evidence by having the prosecutor redact the controlled call between Dearment's ex-wife and Dearment before it could be played for the jury. Dearment's ex-wife then testified about the earlier incidents in 1995 where she caught him fondling her daughter in their bed, his admission to her that such had happened, and the pretextual call to confront him about the incidents to obtain his taped admission. Afterwards, the brief portion of the redacted tape was played for the jury. Dearment's former stepdaughter, 16 at the time of trial, then testified

briefly that Dearment had rubbed her vagina more than one time while she was lying between him and her mother in bed when she was four years old.

On appeal, Dearment contends the trial court abused its discretion by overruling his Evidence Code section 352 objection and permitting the prosecutor to present the Evidence Code section 1108 evidence concerning his earlier conviction for molesting his former stepdaughter. He specifically argues the court abused its discretion when it found both the prejudicial effect and the probative value of such evidence to be "great," but nonetheless declined to exclude it under Evidence Code section 352, and because such other crimes evidence was too similar to the crimes in this case. No abuse of discretion is shown on this record.

Subject to Evidence Code section 352, Evidence Code section 1108 permits a jury to consider prior incidents of sexual misconduct for the purpose of showing a defendant's propensity to commit offenses of the same type and essentially permits such evidence to be used in determining whether the defendant is guilty of a current sexual offense charge. (Evid. Code, § 1108, subd. (a).)[4] Although before Evidence Code section 1108 was

---

[4]     Evidence Code section 1108, subdivision (a), provides that "[i]n a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by [Evidence Code] Section 1101, if the evidence is not inadmissible pursuant to [Evidence Code] Section 352." This section allows admission, in a criminal action in which the defendant is accused of one of a list of sexual offenses, of evidence of the defendant's commission of another listed sexual offense that would otherwise be made inadmissible by Evidence Code section 1101, subdivision (a). The prior and charged offenses are considered sufficiently similar if they are both sexual offenses enumerated in Evidence Code section 1108, subdivision (d)(1)(A) through (F). (*People v. Frazier* (2001) 89 Cal.App.4th 30, 41 (*Frazier*).)

25

enacted, prior bad acts were inadmissible when their sole relevance was to prove a

defendant's propensity to engage in criminal conduct (see Evid. Code, § 1101[5]; *People v.*

*Falsetta* (1999) 21 Cal.4th 903, 911, 913 (*Falsetta*)), its enactment created a statutory

exception to the rule against the use of propensity evidence, allowing admission of

evidence of other sexual offenses in cases charging such conduct to prove the defendant's

disposition to commit the charged offense. (*Id.* at p. 911.)  The California Supreme Court

has ruled that section 1108 is constitutional. (*Id.* at pp. 910-922.)

However, because Evidence Code section 1108 conditions the introduction of

uncharged sexual misconduct or offense evidence on whether it is admissible under

Evidence Code section 352,[6] any objection to such evidence, as well as any derivative

due process assertion, necessarily depends on whether the trial court sufficiently and

properly evaluated the proffered evidence under that section. "A careful weighing of

prejudice against probative value under [Evidence Code section 352] is essential to

---

5    Evidence Code section 1101 provides in relevant part: "(a) Except as provided in
this section and in Section[] . . . 1108 . . ., evidence of a person's character or trait of
his . . . character (whether in the form of . . . evidence of specific instances of his . . .
conduct) is inadmissible when offered to prove his . . . conduct on a specified occasion.
[¶] (b) Nothing in this section prohibits the admission of evidence that a person
committed a crime, civil wrong, or other act when relevant to prove some fact (such as
motive, opportunity, intent, preparation, plan, knowledge, absence of mistake or
accident . . . ) other than his . . . disposition to commit such an act."
    To be relevant on the issue of intent, uncharged crimes need only be sufficiently
similar to a charged offense to support the inference that the defendant probably harbored
the same intent in each instance. (*People v. Kipp* (1998) 18 Cal.4th 349, 371 (*Kipp*).)

6    Evidence Code section 352 provides: "The court in its discretion may exclude
evidence if its probative value is substantially outweighed by the probability that its
admission will (a) necessitate undue consumption of time or (b) create substantial danger
of undue prejudice, or confusing the issues, or of misleading the jury."

protect a defendant's due process right to a fundamentally fair trial. [Citations.]" (*People v. Jennings* (2000) 81 Cal.App.4th 1301, 1314 (*Jennings*).) As our Supreme Court stated in *Falsetta*, in balancing such Evidence Code section 1108 evidence under Evidence Code section 352, "trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other . . . offenses, or excluding irrelevant though inflammatory details surrounding the offense. [Citations.]" (*Falsetta, supra*, 21 Cal.4th at p. 917.) In evaluating such evidence, the court must determine "whether '[t]he testimony describing defendant's uncharged acts . . . was no stronger and no more inflammatory than the testimony concerning the charged offenses.' " (*People v. Harris* (1998) 60 Cal.App.4th 727, 737-738 (*Harris*).)

On appeal, we review the admission of other acts or crimes evidence under Evidence Code section 1108 for an abuse of the trial court's discretion. (*Kipp, supra*, 18 Cal.4th at p. 371.) The determination as to whether the probative value of such evidence is substantially outweighed by the possibility of undue consumption of time, unfair prejudice or misleading the jury is "entrusted to the sound discretion of the trial judge who is in the best position to evaluate the evidence. [Citation.]" (*People v. Fitch* (1997) 55 Cal.App.4th 172, 183.) The weighing process under section 352 "depends upon the

27

trial court's consideration of the unique facts and issues of each case, rather than upon the mechanical application of automatic rules. [Citations.]" (*Jennings, supra*, 81 Cal.App.4th at p. 1314.) " 'The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against defendant as an individual and which has very little effect on the issues. In applying section 352, "prejudicial" is not synonymous with "damaging." ' " (*People v. Bolin* (1998) 18 Cal.4th 297, 320.) We will not find that a court abuses its discretion in admitting such other sexual acts evidence unless its ruling " 'falls outside the bounds of reason.' [Citation.]" (*Kipp, supra,* 18 Cal.4th at p. 371.) In other words, we will only disturb a trial court's ruling under Evidence Code section 352 where the court has exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a miscarriage of justice. (*Frazier, supra,* 89 Cal.App.4th at p. 42.)

Here, the record affirmatively reflects the trial court carefully considered Dearment's prior conduct and conviction, its nature and similarity to the charged offenses, and weighed its prejudice against its probative value, finding in the end that its prejudicial effect, though great, was outweighed by its probative value. Essentially, the court found the prior sexual acts evidence to be the precise type of evidence anticipated by the Legislature in enacting Evidence Code section 1108, that it revealed conduct no more prejudicial than the conduct for which the defendant was currently on trial (see *Harris, supra,* 60 Cal.App.4th at pp. 737-738) and it was highly probative as propensity evidence. (See *People v. Waples* (2000) 79 Cal.App.4th 1389, 1392-1395.) Although the earlier conduct was similar to the conduct in the current case, it was not identical.

Dearment had previously been convicted of rubbing his four-year-old stepdaughter's vagina while here he was charged with applying lotion to and touching the vaginas of two minor victims, four-year-old KS and his own two-year-old daughter E, not only with his hands but also with his penis. The court spent considerable time with the parties to determine how the evidence would be presented and how to limit its prejudicial effect. In permitting counsel to apprise the jury that Dearment had already suffered a prior conviction and punishment for the earlier sexual misconduct based on his own admissions, the court helped reduce its prejudicial impact by "ensuring that the jury would not be tempted to convict the defendant simply to punish him for the other offenses, [or have their attention] diverted by having to make a separate determination whether defendant committed the other offenses." (*Falsetta*, *supra*, 21 Cal.4th at p. 917.) On this record, we cannot find that the trial court abused its discretion in weighing the proposed evidence under Evidence Code section 352 and admitting it under Evidence Code section 1108.

## V

### *ADMISSION OF EXPERT TESTIMONY ON CSAAS*

Dearment essentially challenges the propriety of California's rule allowing limited admission of CSAAS evidence, which is a collection of behaviors that has been observed commonly in children who have experienced sexual abuse. (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1300 (*McAlpin*); see *People v. Bowker* (1988) 203 Cal.App.3d 385, 389, 392-394 (*Bowker*).) Before addressing his specific contentions concerning CSAAS, we briefly set out the law in California regarding such evidence and the relevant background

29

regarding its admission in this case.  We shall conclude Dearment's challenges to the

CSAAS evidence either fail or are waived.

A.  The Pertinent Law

CSAAS, which was developed as a therapeutic tool to assist mental health

professionals, describes five stages or behaviors commonly found in or experienced by,

children who have been sexually abused, including secrecy, helplessness, entrapment and

accommodation, delayed disclosure, and retraction.  (*Bowker, supra*, 203 Cal.App.3d at

p. 389, fn. 3, p. 392, fn. 8.)  Evidence regarding CSAAS " ' "is admissible solely for the

purpose of showing that the victim's reactions as demonstrated by the evidence are not

inconsistent with having been molested." ' [Citations.]"  (*People v. Housley* (1992) 6

Cal.App.4th 947, 955 (*Housley*), quoting *Bowker, supra,* 203 Cal.App.3d at p. 394.)

Such evidence, however, "is not admissible to prove that the complaining witness has in

fact been sexually abused; it is admissible to rehabilitate such witness's credibility when

the defendant suggests that the child's conduct after the incident--e.g., a delay in

reporting--is inconsistent with his or her testimony claiming molestation."  (*McAlpin,*

*supra,* 53 Cal.3d at p. 1300.)  The expert testimony is "admissible for the limited purpose

of disabusing a jury of misconceptions it might hold about how a child reacts to a

molestation." (*People v. Patino* (1994) 26 Cal.App.4th 1737, 1744 (*Patino*).)

Because particular aspects of CSAAS are as consistent with false testimony as true

testimony, and there is a possibility that a jury could use the expert evidence to

improperly infer that the abuse occurred, the admission of such evidence is subject to

certain limitations.  (*Housley, supra,* 6 Cal.App.4th at p. 955; *Bowker, supra,* 203

Cal.App.3d at pp. 393-394; *Patino, supra,* 26 Cal.App.4th at p. 1744.) First, the CSAAS

evidence must be addressed or tailored to some specific myth or misconceptions

suggested by the evidence.[7] (*Housley, supra,* 6 Cal.App.4th at p. 955.) Second, the jury

must be admonished that the expert's testimony is not intended and should not be used to

determine whether the victim's molestation claim is true, but is admissible solely to show

that the victim's reactions are not inconsistent with having been molested. (*Id.* at pp. 955,

958-959.)

### B. Background

During in limine motions, the court noted that Dearment's counsel had filed

written opposition in general to the prosecution's request for the admission of CSAAS

evidence in its case-in-chief, asking that such evidence be limited so it would not relate to

KS's specific complaints in this case. The court said it was inclined to allow the CSAAS

evidence with the appropriate limitations, to conduct an Evidence Code section 402

hearing on the proposed expert's testimony and to preclude any mention of the CSAAS

evidence until KS's credibility had been raised as an issue in the case.

Defense counsel agreed, but expressed concern that the same expert who was

going to testify on the CSAAS evidence was also a witness who had interviewed KS and

---

[7] "Identifying a 'myth' or 'misconception' has not been interpreted as requiring the prosecution to expressly state on the record the evidence which is inconsistent with the finding of molestation. It is sufficient if the victim's credibility is placed in issue due to . . . paradoxical behavior, including a delay in reporting a molestation. [Citations.]" (*Patino, supra,* 26 Cal.App.4th at pp. 1744-1745.) CSAAS testimony "is admissible to rehabilitate [the complaining] witness's credibility when the defendant suggests that the child's conduct after the incident--e.g., a delay in reporting--is inconsistent with his or her testimony claiming molestation." (*McAlpin, supra,* 53 Cal.3d at p. 1300.)

had conducted a forensic exam of the child.  Counsel objected that permitting the expert

to testify in both capacities might be "running . . . afoul of the law in this area. . . ."  The

prosecutor disagreed that there would be any problem because the forensic interviewer, in

this case McLennan, would not be permitted to comment on the interview or the child's

credibility and would only set the scene for the playing of the videotape of the interview

with KS.

The court agreed with defense counsel that "the jurors could very easily allow

[McLennan's] two roles to mesh somehow, and could very easily assess her testimony as

it applies only to [KS,]" but thought "the issue is fixable by instructing the jury that this

particular . . . witness in this case is wearing . . . two hats. . . [a]nd that the jury is not to

consider anything she says as an expert as applying to this particular victim, but only as

an expert in general principles."  The court invited defense counsel to prepare the

proposed cautionary instruction in such regard.  It also noted that there would have to be

a "definite break" in the witness's testimony, so that there were two distinct parts and the

jury instructed as to when she was "putting on a hat of an expert."

When defense counsel proposed to stipulate to the admission of the videotaped

interview of KS with McLennan and just have McLennan testify as an expert on CSAAS,

the court noted it was at a loss because it did not know the extent of McLennan's

testimony under her interviewer role.  However, the court said it would accept such a

stipulation as to foundation for the admission of the video tape and allow McLennan to

testify only as an expert if the parties chose to proceed in that manner, but would leave it

up to the parties to work the matter out.

32

During trial, outside the jury's presence, the court noted it understood McLennan was going to be the next witness who would testify both about an interview with the alleged victim KS as well as give expert testimony regarding CSAAS. The court noted that although there had been initial discussions regarding an Evidence Code section 402 hearing, the defense had agreed such would not be necessary and that the cautionary instruction prepared by the defense regarding McLennan's two roles was "generally acceptable to the court." The court proposed to give the instruction after the first part of McLennan's testimony and before the second part as an expert. The parties agreed with that procedure although the prosecutor had not yet seen the instruction.

Subsequently, the parties "settled on the wording of the precautionary instruction" and before McLennan gave her expert testimony the trial judge instructed the jury as follows:

> "Ladies and Gentlemen, Ms. McLennan the witness who's on the stand now, will be testifying today in two completely separate and distinct areas. And, in fact, in effect she will be wearing two hats. First of all, she has now testified about her interview with [KS] at Palomar Hospital. Second, she will now be testifying, as I understand it, about child sex abuse disclosure patterns, and suggestibility. [¶] Ms. McLennan's expert testimony in this area, is not evidence that Mr. Dearment committed any of the crimes charged against [KS]. You may consider this evidence only in deciding whether [KS's] conduct was or was not consistent with the conduct of someone who has been molested, in evaluating the believability of her testimony. You should not and must not conclude that because Ms. McLennan interviewed [KS] and has also testified as an expert, that she is giving an opinion on whether [KS] is telling the truth or was, in fact, molested by Mr. Dearment."

When the prosecutor started his direct examination of McLennan as an expert, he prefaced his first question by stating "we are going to . . . just talk in general terms right

33

now and separate the discussion from any knowledge you have of [KS] and the background here." McLennan then testified in general about concerns with the testimony of children including suggestibility, delayed reporting, life experiences, the ability to distinguish good from bad touching, studies done involving suggestive questions, and cognitive development of memory in children, comparing a child's ability to recall and relay information with that of an adult. Defense counsel cross-examined McLennan about disclosure of sexual abuse by young children and the suggestibility problem regarding children.

When the court instructed the jury on the law at the close of evidence, it again gave the agreed upon cautionary instruction regarding McLennan's testimony, reminding the jury that she was "wearing two hats" and that her "expert testimony was not evidence that Mr. Dearment committed any of the crimes charged against [KS]." The jury was additionally instructed in general regarding how to consider expert testimony. (CALCRIM No. 332.)

*C. Issues and Analysis Concerning CSAAS on Appeal*

Although Dearment recognizes California law admits CSAAS evidence for certain limited purposes, he specifically urges this court to break with such authority, to change California appellate law to follow the rule in other states and jurisdictions that such CSAAS evidence is "inadmissible for any purpose," because it violates a defendant's due process rights to a fair trial under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and to find that as a matter of law the trial court erred in admitting McLennan's expert testimony because it was utilized to unfairly and

34

improperly bolster the credibility of the prosecution's complaining minor witness KS. Dearment also claims the trial court committed prejudicial error in permitting McLennan to testify both as an interviewer of KS and also as the CSAAS expert, which "was undoubtedly given undue influence by the jury."

As the above record shows, and the People properly note in their respondent's brief, Dearment did not object at trial on the constitutional grounds he now raises or to the admission in general of CSAAS evidence. Rather, Dearment's only objections to such evidence were that its admission be properly limited and that there be a clear separation of McLennan's testimony on CSAAS from her testimony regarding her forensic interview with KS, which were both resolved to his satisfaction. Because Dearment did not object that CSAAS evidence should be held inadmissible in California for all purposes by abandoning its current recognition of such evidence[8] or that the testimony was too broad, improperly vouched for KS's credibility, was too closely related to the facts or allowed the jury to conclude molestation occurred, such appellate

---

[8]    Although California courts have certainly recognized the problems identified by Dearment and other states regarding CSAAS evidence (see *Patino, supra*, 26 Cal.App.4th at p. 1744; *Housley, supra*, 6 Cal.App.4th at p. 958), they have also found such evidence constitutionally admissible with proper admonishments to the jury regarding the limits of such evidence. (*Ibid.*; *Bowker, supra*, 203 Cal.App.3d at p. 394.) Such proper admonishments were given in this case. Dearment has not produced any evidence that CSAAS evidence is no longer accepted in the scientific community or that California courts are prepared to reconsider their opinions accepting such evidence. Further, the California Supreme Court has referred to the admissibility of CSAAS evidence in a variety of factual contexts to support various rulings. (See *McAlpin, supra*, 53 Cal.3d at pp. 1300-1301; *People v. Brown* (2004) 33 Cal.4th 892, 905-906.) We are bound to follow the clear import of our high court's rulings. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

objections to the CSAAS evidence are waived. (Evid. Code, § 353; cf. *People v. Diaz* (1992) 3 Cal.4th 495, 527-528.)

In any event, our review of the record in light of the pertinent law reveals the trial court did not abuse its discretion when it admitted McLennan's expert testimony concerning CSAAS. By the time she was called to testify as an expert, Dearment's counsel had cross-examined KS, her mother, and each of the social workers who had interviewed KS, attacking KS's credibility by highlighting inconsistencies in her testimony and suggesting that KS's various statements were in response to suggestive questioning. The misconception that a victim of child abuse would not immediately report the abuse, but keep it secret made the CSAAS evidence relevant in this case and its admission proper in the prosecutor's case-in-chief to rehabilitate the witness's credibility. (*McAlpin, supra*, 53 Cal.3d at p. 1300.)

As noted above, the court properly admonished the jury as to the limited purpose of McLennan's expert CSAAS testimony, in which she neither mentioned this case or expressed an opinion that implied KS was telling the truth or that the molestations occurred. The court also read to the jury the expressly agreed upon instruction crafted by Dearment's counsel regarding McLennan's dual role and the need to consider her expert testimony separately from her earlier testimony regarding her forensic interview of KS. Such instruction given immediately before McLennan's expert CSAAS testimony and again before jury deliberations, and which we presume the jury followed (*People v. Lindberg* (2008) 45 Cal.4th 1, 26), dispels any possible use of McLennan's expert testimony as specifically relating to KS or this case. (See *Housley, supra*, 6 Cal.App.4th

36

955-956.)  Without any affirmative showing otherwise, Dearment's assertion McLennan's

expert testimony "was undoubtedly given undue influence by the jury" because she also

testified earlier about her forensic interview with KS is purely speculative on this record.

In sum, Dearment simply has not shown that the court abused its discretion in

admitting the CSAAS evidence via McLennan's expert testimony in this case.

## DISPOSITION

The judgment is affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:

HALLER, J.

McINTYRE, J.

37