1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

11   RICHARD PETER DeARMENT,                    Civil No.    10cv1717-LAB (CAB)

12                          Petitioner,
                                                **REPORT AND RECOMMENDATION**
13              v.                              **TO DENY PETITION FOR WRIT OF**
                                                **HABEAS CORPUS**
14   MICHAEL MARTEL, Warden,

15                          Respondent.         **[Doc. No. 1]**

16          This Report and Recommendation is submitted to United States District Judge

17   Larry Alan Burns pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United

18   States District Court for the Southern District of California.

19                          I.  PROCEDURAL HISTORY

20          Richard Peter DeArment (hereinafter "Petitioner" or "DeArment"), a state prisoner

21   proceeding pro se, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254

22   challenging his San Diego County Superior Court conviction in case number SCE270987 of

23   lewd and lascivious conduct upon a child (KS) under the age of 14 (Cal. Penal Code § 288 (a)),

24   lewd and lascivious conduct upon a child (E) (Cal. Penal Code § 288 (a)), and true findings that

25   Petitioner committed the above offenses on more than one victim (Cal. Penal Code §

26   667.61(b)(3)(e)), had been convicted of a prior sex offense (Cal. Penal Code § 667.71(a)), had a

27   prior serious felony conviction (Cal. Penal Code §§ 667(a)(1), 668 and 1192.(c)), and had two

28   prior strike convictions (Cal. Penal Code §§ 667(b) through (i), 1170.12 and 668)).  [Lodgment 1

1

1  at 160-165.]  Petitioner is currently serving a sentence of 75 years to life, plus 5 years.

2  [Lodgment 1 at 114-115, 168-169.]

3      Petitioner claims his federal constitutional rights were violated because (1) the trial court

4  erred by allowing evidence under the "fresh complaint doctrine" and pursuant to California

5  Evidence Code section 1360 [Doc. No. 1-1 at 9-12], (2) the trial court erred by allowing KS to

6  testify when she was not a competent witness [Doc. No. 1-1 at 13-17], (3) there was insufficient

7  evidence to support his convictions or the multiple victim allegations against him [Doc. No. 1-1

8  at 17-20], (4) the trial court erred by allowing evidence of Petitioner's 1995 conviction of child

9  molestation [Doc. No. 1-1 at 21-25], and (5) the trial court erred by allowing expert testimony on

10  child sexual abuse accommodation syndrome (CSAAS) [Doc. No.1-1 at 26-36].  Respondent has

11  filed an Answer to the Petition, arguing that the state courts reasonably rejected Petitioner's

12  claims.  [Doc. No. 7 at 9-30.]  Petitioner has not filed a traverse.[1]

13  II.  STATE PROCEEDINGS

14      In an amended information filed in San Diego Superior Court on October 10, 2007,

15  Petitioner was charged with two counts of lewd and lascivious act upon a child under the age of

16  14 (Cal. Penal Code section 288(a)).  [Lodgment 1 at 16-18 .]  It was also alleged that Petitioner

17  had committed an offense as described in Penal Code section 667.61, subd. (c) on more than one

18  victim (Cal. Penal Code section 667.61 (b)(3)(e)) and that Petitioner had been convicted of a

19  prior sex offense (Cal. Penal Code section 667.71 (a)), had a serious prior felony conviction

20  (Cal. Penal Code sections 667(a)(1), 668 and 1192.7(c)) and had two prior strike convictions

21  (Cal. Penal Code sections 667(b) - (i), 1170.12 and 668).  [Lodgment 1 at 16-18.]

22      On October 16, 2007 a jury convicted Petitioner of two counts of lewd and lascivious act

23  upon a child under the age of 14, and found true the allegations that more than one victim was

24  involved.  [Lodgment 1 at 162-63.]  On October 17, 2007, a court trial was held on Petitioner's

25  prior conviction and strike allegations, with the court finding them all true.  [Lodgment 1 at 164-

26  65.]  On December 7, 2007, Petitioner was sentenced to a total prison term of 75 years to life

27  plus 5 years.  [Lodgment 1 at 114-115.]  Additional sentences for the multiple victim

28  

---

[1] Petitioner's traverse was due on December 1, 2010. [Doc. No. 6.]

11cv46

1   enhancements were stayed.  [Lodgment 1 at 168-69.]

2        On July 3, 2008, Petitioner filed a direct appeal, raising the same claims he raises in this

3   federal petition.  [Lodgment 3.]  On April 28, 2009, the California appellate court denied

4   Petitioner's claims and affirmed the judgment.  [Lodgment 6, People v. Dearment, No.

5   D052188, slip.op. (Cal. Ct. App. April 28, 2009).]  On June 1, 2009, Petitioner filed a Petition

6   for Review with the California Supreme Court.  [Lodgment 7.]  On August 12, 2009, the

7   California Supreme Court denied the petition for review.  [Lodgment 8.]

8                                    III.  UNDERLYING FACTS

9        This Court gives deference to state court findings of fact and presumes them to be correct.

10  See 28 U.S.C. § 2254(e)(1); see also Parke v. Raley, 506 U.S. 20, 35-36, 113 S.Ct. 517, 121

11  L.Ed.2d 391 (1992) (holding findings of historical fact, including inferences properly drawn

12  from these facts, are entitled to statutory presumption of correctness).  The relevant facts as

13  found by the state appellate court are as follows:

14       Because Dearment challenges the sufficiency of the evidence to support his two
         counts of lewd and lascivious acts upon a child, we set out the facts regarding
15       those counts in full and in the light most favorable to the judgment.  (People v.
         Snow (2003) 30 Cal.4th 43, 66.)  In doing so, we refer to the young victims of the
16       sexual misconduct as "KS" and "E" and protect their identity by referring only to
         their family members, other than Dearment, by their status.

17
         The Prosecution Case
18       Dearment and KS's father met while working construction jobs and became close
         friends. Their respective families also became good friends who spent time
19       together outside of the men's work relationship.  At the time of trial in October
         2007, KS was five and a half years old and Dearment's daughter E was about four
20       years old. KS and E often played together and became fast friends.

21       At some point near the end of 2006, when KS's father approached Dearment with a
         proposal to go into business together, Dearment revealed to him and KS's mother
22       that he had previously been convicted of child molestation.  Dearment explained
         that although he was not guilty, he had pled guilty to sexually assaulting his former
23       stepdaughter because he had a bad attorney who railroaded him into pleading in
         the face of accusations by his ex-wife as he could not afford a better attorney. Both
24       KS's mother and father believed Dearment because they were such good friends
         and they trusted him.

25
         In February 2007, while KS's mother was putting lotion on KS after her nightly
26       bath, she spilled some lotion near the girl's genital area.  When KS's mother said
         she needed to clean it up so it would not get on her private part, KS responded in a
27       matter of fact way, "why, Mama, [Dearment] does."  KS then showed her mother
         where Dearment had touched her by spreading her legs and tickling her vagina.
28       When KS's mother held her little finger out bent at a 90-degree angle and said
         "aren't boys' pee pees funny, they are these little things that you see," KS

                                               3

responded by holding her hands about six to eight inches apart, saying "oh, no mama. His pee pee was big."  After telling KS that Dearment should not have done that, KS's mother dressed KS in her pajamas, read her a story, prayed with her and put her to bed.

Afterwards, KS's mother told her husband what KS had said and talked about the matter, not knowing what to do. The next day, KS's mother spoke with her supervisor at the preschool where she worked, who advised her that Child Protective Services (CPS) needed to be contacted. CPS was contacted later that day and arranged to have a social worker immediately visit the family.

CPS social worker Mary Horning, who was referred the case, arrived at KS's family home around 3:00 p.m. that afternoon. After briefly talking with KS's parents, who told her the basic details of what KS had reported to mother, Horning interviewed KS alone about what had happened with Dearment. After it was established that KS knew the difference between the truth and a lie and understood spatial concepts, KS told Horning that Dearment had touched her on her private, had rubbed lotion on it, and had done the same to E. KS said these acts occurred in Dearment's and his wife's bedroom and that Dearment's "private" was "big, like a stick," and "stuck straight out."

Horning stopped the interview at this point and contacted the authorities because she believed a crime had been committed. KS's parents had also provided Horning with information that the incident with Dearment must have happened on July 3, 2005, when Dearment babysat KS while her father was in the hospital following a work accident. Before she left the home, Horning cautioned KS's parents not to initiate any conversations with KS about the allegations and that if KS brought up the subject, they should just listen and be supportive.

KS was next interviewed on March 1, 2007, by Laurie Fortin, a forensic interviewer at the Chadwick Center in Children's Hospital (CCH). Fortin's interview with KS, in which she claimed the incident with Dearment occurred when her father was in the hospital and she was at Dearment's house, was videotaped. Fortin also admonished KS's parents about the importance of not discussing the allegations with KS.

The CPS investigation into the molestation charges was closed according to standard protocol in March 2007 as "inconclusive" because law enforcement had not provided CPS with any information to complete the report within the 30-day limit. However, the case was reopened in April 2007 after KS disclosed to her mother that Dearment had molested her and E on another occasion. Sometime after having a meeting with the prosecutor and the prosecutor's investigator concerning the allegations, without any solicitation, KS related the second incident occurred when she was with Dearment on a "play date" during which time he played a game with her and E where he rubbed powder or lotion onto her and E's "pee pees" and his own "pee pee," and then placed his "pee pee" on her and also did the same to E. KS's mother then contacted the prosecutor and a second interview of KS was set up, this time at Palomar Hospital with forensic interviewer Catherine McLennan.

Dearment was subsequently charged with molesting KS and E on two different occasions. At his preliminary hearing on July 11, 2007, KS testified she did not remember Dearment touching her and frequently answered "I don't know" to questions, essentially freezing up and being unable to express anything about what had happened with Dearment. After she was outside the hearing, both her parents confronted KS in the hallway and scolded her for not testifying to what she remembered and for not telling the truth.

11cv46

Before trial, KS attended therapy sessions and participated in the "kids in court" program designed to familiarize children and their parents about courtroom procedure and to help them feel comfortable in such setting. The program did not permit the children to talk about their specific cases, but only encouraged them to tell the truth.

In addition to the above evidence being presented at trial, KS's father testified about a recorded "pretext" telephone call he had made to Dearment at the request of the prosecution in an attempt to get Dearment to admit he had molested KS. Dearment, however, did not admit any wrongdoing and only became angry. KS's father and mother also testified that they recalled an occasion before July 2007 when Dearment had volunteered to babysit KS while they went on a date. On that occasion, they dropped KS off with Dearment at his house for about three hours. Regarding the hallway incident with KS after the preliminary hearing, each parent testified that they had been frustrated by KS not answering questions as she had before to the social worker and forensic interviewers, but that they regretted doing so. KS's mother conceded she had told the prosecutor's detective at one of the court visits that she had reminded KS not to forget to talk about E when she talked about the incidents with Dearment.

KS testified at trial, explaining she knew the difference between truth and a lie and answering general questions showing she cognitively understood the difference between questions she could answer and those she could not. KS recalled an incident when she was at Dearment's with "baby" E when no one else was there. At that time, they were in Dearment's and his wife's bedroom and she and E took turns going in a circle on the bed, stopping and pulling down their pants, while Dearment stood by the end of the bed with his pants down and put his "private part" on their private parts. He also put his hand on their private parts. KS described Dearment's private as being big.

KS testified it was Dearment's idea to play this game and he told her to keep it a secret. She said this game occurred when her daddy was hurt and she stayed with Dearment, had dinner and then Dearment, not his wife, gave her and E a bath. KS also recalled being at Dearment's home another time but could not remember exactly when that was. On cross-examination, KS said her mother had talked to her about the incident "quite a lot" and had told her Dearment was a "bad man."

After KS had left the courtroom, the court noted for the record that "there was about a five-second pause from [KS] when she was asked if she was telling the truth about what happened...." The court also noted that KS's answers were not immediate-"there were pauses of one, two, maybe three seconds, possibly at the very beginning pauses of five seconds, as well, if not more."

The two forensic interviewers, Fortin and McLennan, testified about their respective videotaped interviews with KS during the investigation and Fortin also explained the problems of suggestive and contaminating questions to children in general. The video tapes of the two interviews were played for the jury. McLennan then testified in general as an expert on CSAAS.

Dearment's ex-wife and former stepdaughter also testified at trial concerning the 1995 molestation of the stepdaughter when she was four years old. On one occasion when the stepdaughter had crawled into their bed and was sleeping between Dearment and his ex-wife, the ex-wife had awakened to notice the covers wiggling. As she pulled her daughter closer to her, Dearment shoved her away from him and jumped out of bed. When she then asked her daughter if Dearment had touched her, the child said "yes," he had rubbed her private parts. When

Dearment's ex-wife confronted him about the matter, he denied it and when he denied it again in front of the child, his stepdaughter said, "you really do. You really do." Dearment's ex-wife then told him to leave the house and took her daughter to her parents.

Later, when Dearment's ex-wife returned home, Dearment admitted to her he had rubbed her daughter's vaginal area, but claimed it was the ex-wife's fault. Subsequently, his ex-wife placed a "controlled" telephone call to Dearment, which was surreptitiously recorded by investigating officers and during which he admitted he had rubbed her daughter's vagina a dozen times. A redacted portion of Dearment's recorded admission was played for the jury.

The stepdaughter, who was 16 years old at the time of trial, testified about the prior molestation, saying that Dearment had repeatedly rubbed her vagina when she crawled into bed with him and her mother.

[Lodgment 6 at 2-9.]

## IV. DISCUSSION

A.  Standard of Review

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C.A. § 2254(a) (West 2006) (emphasis added).  As amended, 28 U.S.C. § 2254(d) reads:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d)(1)-(2) (West 2006) (emphasis added).

"The Anti-Terrorism & Effective Death Penalty Act [AEDPA] establishes a 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" Womack v. Del Papa, 497 F. 3d 998, 1001 (9th Cir. 2007) (quoting Woodford v. Viscotti, 537 U.S. 19, 24 (2002)).  To obtain federal habeas relief, Petitioner must satisfy either § 2254(d)(1) or § 2254(d)(2).  See Williams v. Taylor, 529 U.S.

11cv46

1  362, 403 (2000).  The Supreme Court interprets § 2254(d)(1) as follows:

2      Under the "unreasonable application" clause, a federal habeas court may grant the
       writ if the state court identifies the correct governing legal principle from this
3      Court's decisions but unreasonably applies that principle to the facts of the
       prisoner's case.
4      Under the "contrary to" clause, a federal habeas court may grant the writ if the
       state court arrives at a conclusion opposite to that reached by this Court on a
5      question of law or if the state court decides a case differently than this Court has
       on a set of materially indistinguishable facts.
6  Williams, 529 U.S. at 412-13; see also Lockyer v. Andrade, 538 U.S. 63, 73-74 (2003).

7      Where there is no reasoned decision from the state's highest court, the Court "looks

8  through" to the underlying appellate court decision.  Ylst v. Nunnemaker, 501 U.S. 797, 801-06

9  (1991).  If the dispositive state court order does not "furnish a basis for its reasoning," federal

10  habeas courts must conduct an independent review of the record to determine whether the state

11  court's decision is contrary to, or an unreasonable application of, clearly established Supreme

12  Court law.  See Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other

13  grounds by Lockyer, 538 U.S. at 75-76); accord Himes v. Thompson, 336 F.3d 848, 853 (9th

14  Cir. 2003).  However, a state court need not cite Supreme Court precedent when resolving a

15  habeas corpus claim  "so long as neither the reasoning nor the result of the state-court decision

16  contradicts [Supreme Court precedent,]" the state court decision will not be "contrary to" clearly

17  established federal law.  Early v. Packer, 537 U.S. 3, 8 (2002).

18  B.  Petitioner is not entitled to habeas relief on his first claim that the trial court erred when it

19  allowed the admission of evidence pursuant to the "fresh complaint doctrine" and pursuant to

20  California Evidence Code section 1360.

21      Petitioner argues that the trial court erred when it allowed the admission of evidence

22  pursuant to the "fresh complaint doctrine" and pursuant to California Evidence Code section

23  1360. [Doc. No. 1-1 at 9-12.] Respondent contends that Petitioner's challenges to the admission

24  of evidence pursuant to California Evidence Code section 1360 and the fresh complaint doctrine

25  fail to state a federal question. [Doc. No. 7 at 16.] Respondent further argues that, to the extent

26  Petitioner's assertion can be construed to invoke the Sixth Amendment right to confrontation,

27  the state courts reasonably rejected the claim. [Doc. No. 7 at 16 - 12.]

28      Petitioner presented this claim to the California Supreme Court in a petition for review.

[Lodgment 7 at 3-6.]  The California Supreme Court summarily denied the petition for review.  [Lodgment No. 8.]  In Y1st v. Nunnemaker, 501 U.S. 797, 804 (1991), the Court adopted a presumption which gives no effect to unexplained state court orders but "looks through" them to the last reasoned state court decision.  Petitioner presented this  claim to the appellate court in the same fashion it was presented to the state supreme court. [Lodgment 7 at 3-6; Lodgment 3 at 8-12.]  The appellate court denied the claim in a reasoned opinion. [Lodgment 6, People v. Dearment, D052188, slip op. (Cal. Ct. App. April 28, 2009).]

        The Court will therefore look through the silent denial by the state supreme court to the appellate court opinion.  The appellate court stated:

> During in limine motions, the trial court addressed the prosecutor's motion to admit KS's mother's recitation of the child's "revelation of these events" under the fresh complaint doctrine and Evidence Code section 1360,[2] as well as admitting KS's statements made to the social worker and those in the forensic interviews regarding the details of the alleged molest under Evidence Code section 1360.

> Dearment's counsel objected to the mother's statements coming in as fresh complaints because of the 11-month delay after the purported molest, arguing it was stale rather than fresh, and objected to any statements coming in under Evidence Code section 1360 on hearsay and right to confrontation grounds. Counsel also thought the statements made to the mother did not manifest sufficient indicia of reliability to be admitted under Evidence Code section 1360.

> The prosecutor disagreed, arguing with regard to the mother's testimony, the facts of this case were very similar to another case where the fresh complaint doctrine was found to apply and the circumstances of how the disclosure was made to her by KS showed the reliability of the statements. The prosecutor apprised the court she was willing to have an Evidence Code section 402 hearing on the issue if the court desired one.

---

        [2] [footnote in original] Evidence Code section 1360 provides in pertinent part: "(a) In a criminal prosecution where the victim is a minor, a statement made by the victim when under the age of 12 describing any act of child abuse or neglect performed with or on the child by another, or describing any attempted act of child abuse or neglect with or on the child by another, is not made inadmissible by the hearsay rule if all of the following apply: [¶] (1) The statement is not otherwise admissible by statute or court rule. [¶] (2) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability. [¶] (3) The child either: [¶] (A) Testifies at the proceedings. [¶] (B) Is unavailable as a witness, in which case the statement may be admitted only if there is evidence of the child abuse or neglect that corroborates the statement made by the child. [¶] (b) A statement may not be admitted under this section unless the proponent of the statement makes known to the adverse party the intention to offer the statement and the particulars of the statement sufficiently in advance of the proceedings in order to provide the adverse party with a fair opportunity to prepare to meet the statement."

The trial judge agreed with the prosecutor, finding that the case she cited was right on point concerning the delayed disclosure and stating "there was a similar triggering event, from what I know about this case, and that is that mom was putting lotion on [KS's] privates, or that they got on the privates indirectly or by mistake, and [KS] had the same 'ah-ha moment' when she said, 'hey, [Dearment] did this to me as well. He put stuff there, similar stuff on my privates.' [¶] And that triggering event of mom doing it, making her remember what [Dearment] did, I think fits squarely on all fours with the fresh complaint doctrine. [¶] Moreover, in the matter of fairness, I think the jury has a right to know that [KS's] complaint did not just come out of thin air seven or eight months after the event, it came out of a triggering event that made her remember it, and made her realize this has been done before to her." The court therefore overruled Dearment's objections and ruled mother's testimony regarding KS telling her about the incident seven or eight months earlier was admissible within the fresh complaint doctrine. It also found admissible KS's statements to the social worker and forensic interviewers, as well as to her mother regarding the details of the molest, under Evidence Code section 1360, noting that its concerns regarding confrontation had been obviated because KS was going to be a witness.

Subsequently, just before opening statements at trial, defense counsel raised the issue of a new disclosure by KS to her mother for which the defense had not been properly noticed under Evidence Code section 1360. Counsel explained that she had received notice only of the statements KS had originally made to her mother, to the social worker and the two forensic interviewers, but had not received notice of some recent statements revealed to the prosecution in September 2007 when KS was brought to court for a practice run. Apparently, the prosecutor "had taped the mother and the detective and her own conversations while they were getting ready to go into court to do the practice run with the child and [the mother] said that [KS] had been talking to her about [Dearment] making her go around and around in a circle [and] she didn't want to do it, but she didn't want to get in trouble." When mother asked her what she meant, KS "told her that [Dearment] would stand at the end of the bed and they would go around and around." When mother asked her to show her what she meant, KS stood up and demonstrated going around in a circle, which she said she did until Dearment made her stop and pull down her underwear. KS also said she was behind E when Dearment had them do this and that it "happened four times on two different play dates." Defense counsel represented that she had received the information a week before trial and was objecting to its admission under Evidence Code section 1360 due to untimely notice and the lack of sufficient indicia of reliability.

Defense counsel noted that she had not requested an Evidence Code section 402 hearing on the reliability of the earlier statements KS made to the social worker or to mother on the initial disclosure "because ... that had been dealt with early on and those statements would be reliable under [Evidence Code section] 1360. But as to this recent revelation, revealed on September 24th, before trial, I think it is completely different."

The prosecutor conceded he had made the mistake of lumping the recent disclosure in with the others made in February and April 2007, the notice was untimely because there was no way to provide earlier notice due to the disclosure happening so close to the start of trial and agreed there should be an Evidence Code section 402 hearing even though he thought the statements were reliable under the circumstances. The court ruled that the prosecutor would be precluded from referring to the new disclosure in his opening statement unless they were able to hold the evidentiary hearing on those statements before that time. It also overruled defense counsel's renewed objection to any statements by KS offered under

9

Evidence Code section 1360 from being admitted on hearsay and due process grounds. In doing so, the court noted it would consider striking KS's statements to others if KS did not testify in this trial or if she froze up and did not remember anything.

After opening statements, the trial court noted that in an unreported sidebar conference, the prosecutor had advised the court that he had "elected to not present any evidence regarding the late discovered, ... 'circle game.' And therefore, the [Evidence Code section] 402 hearing was not necessary, and for the record, that's why we did not have one." When KS's mother then testified, no questions were asked of her regarding KS's late disclosure in September 2007.

On appeal, although Dearment concedes the nature of KS's allegations to her mother were admissible under the fresh complaint doctrine, he contends the trial court committed error by permitting KS's mother to testify to the details of the alleged molestations (i .e., "he used lotion or powder, he made me play a game, he put his 'pee pee' against mine, her description of [his] private area, etc.") under Evidence Code section 1360. Dearment specifically argues such details were inadmissible hearsay and because the trial court did not hold an Evidence Code section 402 hearing to determine their reliability they were not admissible under Evidence Code section 1360.

Our review of the record reveals that Dearment has waived his right to complain about the admission of KS's statements to her mother under Evidence Code section 1360 on the grounds now raised. Dearment's counsel did not request an Evidence Code section 402 hearing on the admissibility of KS's statements to her mother. Rather counsel conceded that one was not necessary regarding the initial disclosures to KS's mother as well as to the social worker and forensic interviewers because they were reliable for purposes of Evidence Code section 1360. Counsel only requested an evidentiary hearing to challenge the reliability of KS's statements made to her mother in September 2007 and those statements were then not admitted negating the necessity for such hearing. We therefore decline to now consider whether an Evidence Code section 402 hearing should have been held nonetheless, as any error was invited and constitutes a waiver of the issue on appeal. (See, e.g., People v. Wader (1993) 5 Cal.4th 610, 657-658; People v. Lara (1994) 30 Cal.App.4th 658, 673-674.)

Because the reliability of KS's statements to her mother and others was conceded and the other elements, i.e., notice and child testifying to be available for cross-examination (see People v. Brodit (1988) 61 Cal.App.4th 1312, 1329-1330), for admission of such statements under Evidence Code section 1360 were met and are not contested, we conclude after independently reviewing the record that the trial court did not abuse its discretion in admitting the hearsay evidence under Evidence Code section 1360. (See Lilly v. Virginia (1999) 527 U.S. 116, 136; People v. Eccleston (2001) 89 Cal.App.4th 436, 445.)

Moreover, even assuming the trial court abused its discretion in allowing KS's mother to testify under Evidence Code section 1360 to KS's statements regarding the details of Dearment molesting her, any error would be clearly harmless under any standard. KS testified at trial and was subject to cross-examination. Her mother's testimony about how KS reported being molested by Dearment was properly admitted under the fresh complaint doctrine and Dearment does not challenge the admission of KS's statements about the details of the molestations to the social worker or forensic interviewers. KS's own testimony as well as her tape recorded forensic interviews played for the jury established that she understood truth from lies and was capable of understanding the questions and tasks asked of

1    her. Although she froze during the preliminary hearing on certain questions
     regarding the molestations, KS's statements at trial and to the interviewers and
2    social worker were consistent regarding Dearment's conduct in molesting her.
     Under these circumstances, any conceivable error in the admission of KS's
3    statements detailing the molestations to her mother was clearly harmless beyond a
     reasonable doubt and on this record Dearment cannot show any probability of a
4    different result in the absence of those statements. No prejudicial error is shown in
     this regard.
5    [Lodgment 6 at 14-20.]

6        The United States Supreme Court has clearly limited federal courts reviewing petitions

7    for habeas relief to claims based upon federal questions: "it is not the province of the federal

8    habeas court to reexamine state court determinations on state-law questions. In conducting

9    habeas review, a federal court is limited to deciding whether a conviction violated the

10   Constitution, laws, or treaties of the United States." Estelle v. McGuire (McGuire), 502 U.S. 62,

11   68 (1991). Therefore, as a general rule, federal courts may not review a trial court's evidentiary

12   rulings. Crane v. Kentucky, 476 U.S. 683, 689 (1986) ("We acknowledge also our traditional

13   reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial

14   courts."); Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir.1999), cert. denied, 528 U.S. 1198

15   (2000); Windham v. Merkle, 163 F.3d 1092, 1103 (9th Cir.1998). A state court's evidentiary

16   ruling, even if erroneous, is grounds for federal habeas relief only if it is so fundamentally unfair

17   as to violate due process.   Dillard v. Roe, 244 F.3d 758, 766 (9th Cir.2001, as amended May 17,

18   2001), cert. denied, 534 U.S. 905 (2001); Henry, 197 F.3d at 1031; Spivey v. Rocha, 194 F.3d

19   971, 977 (9th Cir.1999), cert. denied, 531 U.S. 995 (2000); see also Windham, 163 F.3d at 1103

20   (The federal court's "role is limited to determining whether the admission of evidence rendered

21   the trial so fundamentally unfair as to violate due process.").

22       Thus, Petitioner's entitlement to habeas relief on this ground does not turn on whether a

23   state evidentiary law has been violated, but whether the admission of the evidence "so infected

24   the entire trial that the resulting conviction violates due process." Estelle v. McGuire, 502 U.S.

25   62, 72 (1991) (internal quotation omitted). Few infractions are fundamentally unfair. Id. at 73

26   (internal quotation omitted).

27       The Ninth Circuit has already ruled that, in general, admission of evidence under

28   California Evidence Code section 1360 does not violate due process.  Brodit v. Cambra, 350

                                              11

F.3d 985, 990 (9th Cir. 2003).  In the state court proceedings, Petitioner argued that, while the nature of KS's allegations to her mother were admissible under the fresh complaint doctrine, the details of the alleged molestations were not, and should not have been allowed into evidence under Evidence Code section 1360 because the trial court did not hold an Evidence Code section 402 hearing to determine their reliability. [Lodgment 3 at 11-12; Lodgment 7 at 5-6.]

As the state appellate court noted, Petitioner waived his right to complain about the admission of KS's statements to her mother under Evidence Code section 1360, because Petitioner's counsel did not request an Evidence Code section 402 hearing on the admissibility of those statements. [Lodgment 2, 1 RT 29-39.] In fact, counsel conceded that a hearing was not necessary as to the initial disclosures to KS's mother as well as to the social worker and forensic interviewers. [Lodgment 2, 2 RT 153-154.]  Rather, counsel requested a 402 hearing with regard to later statements made by KS to her mother [Lodgment 2, 2 RT 154-158], which statements were ultimately never introduced into evidence (making a 402 hearing unnecessary).  Therefore, Petitioner has failed to show how the admission of KS's initial statements to her mother under Ev. Code 1360 "so infected the entire trial that [his] resulting conviction violate[d] due process." McGuire, 502 U.S. at 72.

To the extent that Petitioner's claim can be construed as a Sixth Amendment violation, that claim also must be denied.  "The Sixth Amendment's Confrontation Clause provides that, '(i)n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'  We have held that this bedrock procedural guarantee applies to both federal and state prosecutions." Crawford v. Washington, 541 U.S. 36, 42 (2004) (citing Pointer v. Texas, 380 U.S. 400, 406 (1965)).  The Confrontation Clause "guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." Coy v. Iowa, 487 U.S. 1012, 1016 (1988).  The physical confrontation "enhances the accuracy of factfinding by reducing the risk that a witness will wrongfully implicate an innocent person." Maryland v. Craig, 497 U.S. 836, 846 (1990).  The introduction of prior testimonial statements of a witness violates a defendant's confrontation rights unless the person who made the statements is unavailable to testify and there was a prior opportunity for cross-examination. Crawford, 541

U.S. at 68.  Here, it is clear that Petitioner had the opportunity to cross-examine KS [3RT 318-325], her mother [3 RT 265-291; 298-301], the social worker [3 RT 341-345] and the forensic interviewers [ 3 RT 364-369; 4 RT 481-485].  Thus, there was no violation of the Confrontation Clause.

Lastly, even where statements at issue fall within the scope of Crawford, a violation of the Confrontation Clause is trial error subject to harmless error analysis. See Slovik v. Yates, 556 F.3d 747, 755 (9th Cir.2009) ("Confrontation Clause errors are subject to harmless-error analysis."); Winzer v. Hall, 494 F.3d 1192, 1201 (9th Cir.2007) (same) (citations omitted). Thus, a petitioner is entitled to federal habeas relief only if the confrontation error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).  Here, as noted by the state appellate court, even if the statements were admitted in violation of Evidence Code 1360, any such error was harmless.  KS testified at trial and was subject to cross-examination. [3RT 318-325.] Her mother's testimony about how KS reported being molested by Petitioner was admissible pursuant to the fresh complaint doctrine. Moreover, Petitioner does not challenge the admission of KS's statements about the details of the molestations to the social worker or forensic interviewers, and those details are very similar to the ones reported by the mother. [ 3RT 341-345, 364-369; 4RT 481-485.]   Finally, although KS did freeze during the preliminary hearing on certain questions regarding the molestation [Lodgment 2 at 7-17], her trial testimony and statements to her mother, the social worker and the forensic interviewers[3] were consistent. [Lodgment 2, 3 RT 243-245, 314-326, 338-340; Lodgment 6 at 19-20.] Thus, there is no showing that, if there was a confrontation error, it had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637.

As a result, the state court's denial of this claim was neither contrary to, nor an

---

[3]  This Court did not have access to the videotapes made by the forensic interviewers. However, the state appellate court found that KS's statements at trial and to the forensic interviewers were consistent regarding Petitioner's conduct in molesting her. [Lodgment 6 at 19-20.]  This Court gives deference to state court findings of fact and presumes them to be correct. See 28 U.S.C. § 2254(e)(1); see also Parke v. Raley, 506 U.S. 20, 35-36, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness).

1   unreasonable application of, clearly established Supreme Court law, and the federal habeas claim

2   should be denied.

3   C.  Petitioner is not entitled to habeas relief on his second claim that KS was not a competent

4   witness and the trial court committed error by allowing her testimony.

5        Petitioner argues that KS was not a competent witness and the trial court committed error

6   by allowing her testimony. [Doc. No. 1-1 at 13-20.]  Respondent argues that Petitioner fails to

7   state a federal question. [Doc. No. 7 at 19.] Respondent further argues that the state court

8   decision was neither contrary to, nor an unreasonable application of, established United States

9   Supreme Court authority. [Doc. No. 7 at 19-20.]

10       Petitioner presented this claim to the California Supreme Court in a petition for review.

11  [Lodgment 7 at 7-11.]  The California Supreme Court summarily denied the petition for review.

12  [Lodgment No. 8.]  In <u>Y1st v. Nunnemaker</u>, 501 U.S. 797, 804 (1991), the Court adopted a

13  presumption which gives no effect to unexplained state court orders but "looks through" them to

14  the last reasoned state court decision.  Petitioner presented this  claim to the appellate court in

15  the same fashion it was presented to the state supreme court. [Lodgment 7 at 7-11; Lodgment 3

16  at 13-17.]  The appellate court denied the claim in a reasoned opinion. [Lodgment 6, <u>People v.</u>

17  <u>Dearment</u>, D052188, slip op. (Cal. Ct. App. April 28, 2009).]

18       The Court will therefore look through the silent denial by the state supreme court to the

19  appellate court opinion.  The appellate court stated:

20            In limine, Dearment's counsel also raised the issue of KS's competency to
         testify, stating she was "not sure if I am asking for an [Evidence Code section]
21       402, or to make sure that the foundation for competency is properly laid." Counsel
         thought KS probably knew the difference between the truth and lying, but was
22       concerned with KS's ability to remember and relate due to her young age as
         evidenced by her freezing up at the preliminary hearing.
23
24            The court thought counsel was raising two separate issues, KS's competency
         to testify, which concerned the admissibility of her testimony and the ability to
25       remember which went to the weight of her testimony. The court did not see the
         problem as a qualification issue, because KS had qualified to testify at the
26       preliminary hearing and she understood the difference between telling the truth
         versus telling a lie.

27            Later, after KS and several other witnesses had testified at trial, defense
         counsel asked to make a record objection to KS's competency and availability to
28       testify. Even though KS appeared to give the right answers "in terms of being
         competent in the sense that she knew the difference between truth and a lie [, and]

14

appeared to [be] able [to] relay and relate what had happened to her [,]" counsel was concerned with the long pauses in KS's answers and her complete failure to answer some of the prosecutor's questions until they were reworded. Counsel thus asked the court to find KS "unavailable for purposes of this hearing."

In denying such request, the trial judge specifically stated:

"[KS] was far more halting and seemingly, from the court's view, intimidated and embarrassed at parts of her testimony, then once she got going ..., her answers were responsive, if not almost immediate. I believe that she responded to each attorney's questions, especially after she got over her nerves, I think, appropriately and directly. [¶] And it's true that her responses were somewhat altered and slow, but they made sense. And they were appropriate responses to the questions asked. And there is no basis in the court's view to find her as an unavailable witness. So that objection will be overruled."

On appeal, Dearment contends he was denied a fair trial when the trial court permitted KS to testify without holding a hearing to determine her competency and then failed to exercise its discretion "in making a determination as to [KS's] competency in the face of numerous indicators that she may not be capable of telling the truth ." In making his arguments, Dearment relies on general authority and references the preliminary hearing where KS had responded that she forgot many things, evidence that she was scolded by her parents after the preliminary hearing, and purported inconsistencies in her trial testimony, to assert KS's ability to accurately recall events was questionable rendering her incompetent to testify. Dearment's competency claims have no merit.

Not only did Dearment's counsel not specifically request an Evidence Code section 402 hearing on the matter, counsel also conceded that KS knew the difference between telling the truth and a lie. Thus, as the trial court correctly concluded, no evidentiary hearing was necessary because Dearment's concerns went to the weight of KS's testimony and not to their admissibility or to whether she was competent to testify, a matter which had already been determined before she testified at the preliminary hearing in this case. In addition, when counsel brought the matter up a second time after KS had already testified, the court specifically found that despite some hesitation on certain questions, KS had answered all questions appropriately, which essentially showed she understood them and expressed her understanding of the duty to tell the truth. (Evid.Code, § 701, subd. (a).) The record supports the court's findings. Dearment has simply failed to meet his burden of proving that the trial court abused its discretion by allowing KS to testify or by failing to find her incompetent or unavailable after she testified. ( People v. Dennis (1998) 17 Cal.4th 468, 525.)

To the extent Dearment suggests that KS's testimony was contaminated by her parents after the preliminary hearing, such concern went to the issue of KS's credibility and not to her competency to testify. Similarly, Dearment's concerns regarding the pauses in KS's testimony, her lack of memory of some details and the purported inconsistencies in her testimony also went to her credibility, which was a separate issue from her competence to testify. ( People v. Lewis (2001) 26 Cal.4th 334, 356.) The trial court correctly recognized this difference and permitted KS to testify. No abuse of discretion is shown.

[Lodgment 6 at 20-22.]

First, Petitioner fails to identify how the state appellate court's decision contradicted United States Supreme Court authority.  Rather, Petitioner argues that the trial court was incorrect in its factual finding that KS was competent to testify.  On a habeas claim, however, a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable.  Taylor v. Maddox, 366 F.3d 992, 999 (9th Cir. 2004); 28 U.S.C.A. § 2254(d)(2). Here, it cannot be said that the trial court was wrong, much less unreasonable.  Petitioner's counsel first raised the issue of KS's competency during in limine motions.  [1 RT 64-65.] Petitioner's counsel acknowledged that KS seemed to know the difference between the truth and lying, but was concerned about KS' ability to remember and relate, given that KS had frozen during the preliminary hearing when asked specific questions about the alleged molestation.  [1 RT 64 at ll. 13-26.]  The trial court found that KS was competent to testify and that any memory issues went to the weight of her testimony:

> THE COURT:  YOU KNOW, I THINK WHAT WE ARE TALKING ABOUT ARE COMPETENCY ON THE ONE HAND, AND THE ABILITY TO REMEMBER THINGS THAT HAPPENED TO A FIVE-YEAR-OLD WHEN THAT FIVE-YEAR-OLD WAS THREE-AND-A-HALF OR FOUR.  AND I AM NOT SURE ONE HAS TO DO A LOT WITH THE OTHER.
>
> I THINK ONE HAS TO DO WITH ADMISSIBILITY, AND THE OTHER HAS TO DO WITH WEIGHT.  IF I FIND THAT SHE IS COMPETENT TO TESTIFY IN TERMS OF TELLING A LIE VERSUS TELLING THE TRUTH, AND SHE ANSWERS THOSE QUESTIONS ADEQUATELY, THEN SHE IS ALLOWED TO TESTIFY.
>
> AND IF SHE CAN'T REMEMBER THINGS, OR IF SHE SAYS SHE CANNOT REMEMBER THINGS, OR WHATEVER SHE SAYS, THAT'S FAIR GAME, I THINK FOR ANY ATTORNEY TO ARGUE THAT, "HEY, SHE IS" – YOU KNOW, MS. DE MAURENGNE MAY WISH TO ARGUE, "WELL, THIS HAPPENED OVER A YEAR AGO TO HER, AND SHE IS ONLY FIVE NOW. OF COURSE SHE IS GOING TO HAVE A FOGGY MEMORY."
>
> AND YOU MAY WANT TO ARGUE, MS. KINSEY, "WELL, THESE THINKS HAPPENED OVER A YEAR AGO, SHE IS FIVE NOW, HOW COULD SHE POSSIBLY REMEMBER DETAILS AS A FIVE-YEAR-OLD."
>
> IT GOES TO WEIGHT.  AND THOSE ARE THINGS THAT YOU ARE BOTH ABLE TO USE.  I DON'T THINK IT GOES TO HE [sic] QUALIFICATIONS.  IF IT WAS A YEAR-AND-A-HALF AGO, AND SHE WAS FIVE NOW, AND SHE NOW KNOWS HOW TO TELL THE TRUTH, I THINK THAT'S IT, UNLESS SHE HAS NOT DEVELOPED MENTALLY THE WAY A FIVE-YEAR-OLD SHOULD BE DEVELOPED.  AT THIS POINT, AND I AM ASSUMING SHE IS GOING TO BE, BECAUSE SHE QUALIFIED AT THIS PRELIM.
>
> I DON'T SEE IT AS A QUALIFICATION ISSUE.

[Lodgment 2, 1 RT 64-66.]

After KS testified, Petitioner's counsel objected to her testimony, claiming that she was incompetent, even though she seemed to know the difference between a truth and a lie, because there were long pauses before her answers:

> MS. KINSEY: CAN I PUT SOMETHING ON THE RECORD?
> THE COURT HAS HEARD THE TESTIMONY OF [KS]. I JUST WANT TO MAKE AN OBJECTION ON THE RECORD AS TO HER COMPETENCY AND AVAILABILITY TO TESTIFY. MY CONCERN, AND I KNOW THE COURT OBSERVED THIS, EVEN THOUGH SHE GAVE THE RIGHT ANSWERS IN TERMS OF BEING COMPETENT IN THE SENSE THAT SHE KNEW THE DIFFERENCE BETWEEN TRUTH AND A LIE. SHE APPEARED TO ABLE [sic] RELAY AND RELATE WHAT HAD HAPPENED TO HER. BUT LONG PAUSES IN REGARD TO GIVING THE ANSWERS. A COMPLETE FAILURE TO BE ABLE TO ANSWER SOME OF MR. MECHALS' QUESTIONS, SO HE REWORDED THEM, CAUSES ME TO ASK THE COURT TO FIND HER UNAVAILABLE FOR PURPOSES OF THIS HEARING.

[Lodgment 2, 3 RT 352-353.]

The trial court overruled the objection, finding that, while KS did seem halting at times, her answers were responsive:

> THE COURT: ALL RIGHT. SHE WAS FAR MORE HALTING AND SEEMINGLY, FROM THE COURT'S VIEW, INTIMIDATED AND EMBARRASSED AT PARTS OF HER TESTIMONY, THEN ONCE SHE GOT GOING – ONCE SHE GOT GOING, HER ANSWERS WERE RESPONSIVE, IF NOT ALMOST IMMEDIATE. I BELIEVE THAT SHE RESPONDED TO EACH ATTORNEY'S QUESTIONS, ESPECIALLY AFTER SHE GOT OVER HER NERVES, I THINK, APPROPRIATELY AND DIRECTLY.
> AND IT'S TRUE THAT HER RESPONSES WERE SOMEWHAT ALTERED AND SLOW, BUT THEY MADE SENCE [sic]. AND THEY WERE APPROPRIATE RESPONSES TO THE QUESTIONS ASKED. AND THERE IS NO BASIS IN THE COURT'S VIEW TO FIND HER AS AN UNAVAILABLE WITNESS. SO THAT OBJECTION WILL BE OVERRULED.

[Lodgment 2, 3 RT 353.]

The state appellate court ruled that the trial court did not abuse its discretion in finding that KS was competent to testify, and that any concerns Petitioner raised about her ability to recall events or hesitation before giving answers went to the weight of her testimony, not her competency. [Lodgment 6 at 21-22.] The state appellate court also ruled that, under California law, no further competency hearing was required, as Petitioner's counsel never specifically requested one, and counsel conceded that KS seemed to know the difference between telling the

11cv46

1   truth and a lie.[4] [Id.] There is nothing in the decision of the state trial court that has been shown

2   to be wrong, much less unreasonable.  And there is no showing that the state appellate court's

3   decision was contrary to, or an unreasonable application of, established United States Supreme

4   Court authority.   Therefore, Petitioner's claim for federal habeas relief must fail.

5   D.  Petitioner is not entitled to habeas relief on his third claim that there was insufficient

6   evidence to support his convictions or the multiple victim allegations against him.

7       Petitioner argues that there was insufficient evidence to support his convictions or the

8   multiple victim allegations against him. [Doc. No. 1-1 at 17-20; Doc. No. 7 at 21-25.]

9   Respondent argues that the state appellate court's decision rejecting Petitioner's claim is not

10  contrary to, nor an unreasonable application of, established United States Supreme Court

11  authority. [Doc. No. 7 at 21-25.]

12      Petitioner presented this claim to the California Supreme Court in a petition for review.

13  [Lodgment 7 at 11-14.]  The California Supreme Court summarily denied the petition for review.

14  [Lodgment No. 8.]  In Y1st v. Nunnemaker, 501 U.S. 797, 804 (1991), the Court adopted a

15  presumption which gives no effect to unexplained state court orders but "looks through" them to

16  the last reasoned state court decision.  Petitioner presented this  claim to the appellate court in

17  the same fashion it was presented to the state supreme court. [Lodgment 7 at 11-14; Lodgment 3

18  at 17-20.]  The appellate court denied the claim in a reasoned opinion. [Lodgment 6, People v.

19  Dearment, D052188, slip op. (Cal. Ct. App. April 28, 2009).]

20      The Court will therefore look through the silent denial by the state supreme court to the

21  appellate court opinion.  The appellate court stated:

22          Dearment contends there was insufficient admissible evidence to support
            his convictions for lewd acts upon a child under section 288, subdivision (a) and
23          the multiple victim findings under section 667.61, subdivision (e). He specifically
            argues that KS's testimony and her inability to recall and relate certain details
24          regarding events when she was three or four years old, in light of the numerous
            pauses between questions and answers and inconsistencies in the evidence
25          concerning his alleged conduct, especially in her earlier preliminary hearing

26  _____

27      [4] This is consistent with federal law, where children are presumed competent to testify in child
    abuse cases.  18 USC § 3509(c)(2).  A competency hearing is required only if there are "compelling
28  reasons," other than the child's age, to suggest that the child is incompetent to testify.  18 USC §
    3509(c)(3), (4); United States v. Boyles, 57 F.3d 535, 546, fn. 15 (7th Cir. 1995); Unites States v. Allen
    J., 127 F.3d 1292, 12-95-1296 (10th Cir. 1997).

testimony and statements to others, provided no credible evidence from which a rational trier of fact could have found beyond a reasonable doubt he was guilty as charged. We conclude there was sufficient evidence to support Dearment's convictions under section 288, subdivision (a) and the multiple enhancement findings.

When the sufficiency of the evidence is challenged, we " 'review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence-that is, evidence that is reasonable, credible, and of solid value-from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " ( People v. Hale (1999) 75 Cal.App .4th 94, 105 ( Hale ) quoting People v. Thomas (1992) 2 Cal.4th 489, 514.) In doing so, we " 'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citations.]" ( People v. Johnson (1980) 26 Cal.3d 557, 576-577.) " '[I]t is the jury, not the appellate court, which must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.] Therefore, an appellate court may not substitute its judgment for that of the jury.' " ( People v. Sanchez (1998) 62 Cal.App.4th 460, 468, quoting People v. Ceja (1993) 4 Cal.4th 1134, 1139.) We will not reverse a conviction on the ground of insufficient evidence unless it clearly is shown that "on no hypothesis whatever is there sufficient substantial evidence to support the verdict...." ( People v. Hicks (1982) 128 Cal.App.3d 423, 429.)

A defendant violates section 288, subdivision (a),[5] when he or she willfully commits any lewd or lascivious act upon a child under the age of 14 years with the intent of arousing or gratifying the lust or desires of either the perpetrator or the child. "Nothing in [the language of section 288, subdivision (a) ] restricts the manner in which such contact can occur or requires that specific or intimate body parts be touched. Rather, a touching of 'any part' of the victim's body is specifically prohibited." ( People v. Martinez (1995) 11 Cal.4th 434, 442 ( Martinez ).) Moreover, "the 'gist' of the offense has always been the defendant's intent to sexually exploit a child, not the nature of the offending act. [Citation.]" ( Id. at p. 444.)

Our review for substantial evidence is not limited to the circumstances of the touching, which are "highly relevant" ( Martinez, supra, 11 Cal.4th at p. 452), but extends to all the circumstances. ( Id. at p. 445.) "Because intent can seldom be proved by direct evidence, it may be inferred from the circumstances ." ( In re Jerry M. (1997) 59 Cal.App.4th 289, 299.) Relevant circumstances for assessing the required specific intent include the nature of the charged act, extrajudicial statements, "other acts of lewd conduct admitted or charged in the case" (see People v. Ewoldt (1994) 7 Cal.4th 380, 402, fn. 6; Martinez, supra, at pp. 445, 452), the relationship of the parties, the age of the defendant ( In re Jerry M., supra, 59 Cal.App.4th at pp. 299-300), "and any coercion, bribery, or deceit used to obtain the victim's cooperation or to avoid detection." ( Martinez, supra, 11 Cal.4th at p. 445.)

In order to find true a multiple victim allegation, the jury must additionally

---

[5] [Footnote in original] Section 288, subdivision (a), provides in full: "Any person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years."

determine that the People have proved beyond a reasonable doubt that the lewd or lascivious acts were committed against more than one victim.

Here, Dearment does not specifically contend any of the elements for his crimes or enhancements is unsupported, but rather only challenges in general those convictions and findings, arguing KS's testimony and her statements to others could not provide evidence that was "reasonable, credible and of solid value" to support them. He asserts it is not reasonable due to her young age that KS would be able to recall and relate events that allegedly occurred when she was less than five years old. Dearment, however, fails to appreciate that the jury had before it other testimony regarding KS's statements about the molest of her and E in addition to that of KS's. Her mother testified about KS's report of the molests while she was putting lotion on her; the social worker testified about KS's statements of the molest by Dearment after the mother reported the suspected molests; and two videotaped forensic interviews revealing KS's statements and conduct were played for the jury. In such evidence KS referred to inappropriate touchings by Dearment that happened at least two times to both her and E. The inconsistencies in KS's various statements and the other evidence were fully argued to the jury. Further, the jury had before it Dearment's, his wife's and stepdaughter's testimony as well as that of a friend of his wife's and various stipulations concerning KS's preliminary hearing testimony. The credibility of all the evidence was thoroughly argued to the jury. That the jury believed KS and E were touched inappropriately at least one time each is supported by the above evidence. We do not reweigh the evidence.

Moreover, it is reasonable to infer from the evidence of Dearment's prior convictions of lewd conduct upon a child in 1995 and his taped telephone admission of such earlier vaginal touchings of his stepdaughter, that he would touch KS and E for purposes of his own sexual gratification. Because the requisite specific intent for section 288, subdivision (a) is reasonably inferable under these circumstances, and the evidence supports at least one incident of inappropriate touchings upon two victims by Dearment, we conclude there is substantial evidence to support his convictions of lewd and lascivious conduct as to KS in count 1, E in count 2 and the multiple victim findings for each count.

[Lodgment 6 at 10-13.]

For purposes of AEDPA review, the constitutional standard for a determination of sufficiency of the evidence to support a criminal conviction is set out in Jackson v. Virginia, 443 U.S. 307 (1979), which provides that a habeas petitioner raising a due process challenge to a state court conviction is entitled to relief "if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." McDaniel v. Brown, —— U.S. ——, 130 S.Ct. 665, 666 (2010) ( quoting Jackson, 443 U.S. at 325; see also In re Winship, 397 U.S. 358, 364 (1970) ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"). The test is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have

11cv46

1  found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319

2  (citation omitted); see also Wright v. West, 505 U.S. 277, 284 (1992).[6] If the record supports

3  conflicting inferences, the reviewing court "must presume—even if it does not affirmatively

4  appear in the record—that the trier of fact resolved any such conflicts in favor of the

5  prosecution, and must defer to that resolution." McDaniel, 130 S.Ct. at 673 (quoting Jackson,

6  443 U.S. at 326); see also Juan H. v. Allen, 408 F.3d 1262, 1275 (9th Cir.2005) ("In conducting

7  our inquiry, we are mindful of 'the deference owed to the trier of fact and, correspondingly, the

8  sharply limited nature of constitutional sufficiency review.' ") (quoting Wright, 505 U.S. at

9  296–97 (additional citations omitted))); Roehler v. Borg, 945 F.2d 303, 306 (9th Cir.1991) ("The

10  question is not whether we are personally convinced beyond a reasonable doubt. It is whether

11  rational jurors could reach the conclusion that these jurors reached.").

12      On AEDPA review of an insufficiency of the evidence claim adjudicated by the state

13  courts, a federal court may not grant habeas relief unless the state court applied the Jackson

14  standard in an "objectively unreasonable" manner. McDaniel, 130 S.Ct. at 673 (citing Williams,

15  529 U.S. at 409); Smith v. Mitchell, 624 F.3d 1235, 1239 n. 1 (9th Cir.2010) (same). The

16  inquiry, therefore, is "even more limited" than the Jackson standard itself; "that is, we ask only

17  whether the state court's decision was contrary to or reflected an unreasonable application of

18  Jackson to the facts of a particular case." Emery v. Clark, 643 F.3d at 1213–14 (citing Juan H.,

19  408 F.3d at 1274–75).

20      As stated by the California Court of Appeal, a defendant violates California Penal code

21  section 288(a)[7] when he or she willfully commits any lewd or lascivious act upon a child under

22

23      [6] In determining whether there was sufficient evidence to establish guilt, the essential
    elements of the crime are defined by state law, and the Jackson standard "must be applied with
24  explicit reference to the substantive elements of the criminal offenses as defined by state law."
    Jackson, 443 U.S. at 324 n. 16. See Emery v. Clark, 643 F.3d 1210, 1214 (9th Cir. 2011).
25

26      [7] California Penal Code section 288(a) states: "Any person who willfully and lewdly commits
    any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1,
27  upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with
    the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the
28  child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or
    eight years."

11cv46

the age of 14 years with the intent of arousing or gratifying the lust or desires of either the perpetrator or the child. [Lodgment 6 at 11.] Moreover, "[n]othing in [Section 288(a) restricts the manner in which such contact can occur or requires that specific or intimate body parts be touched. Rather, a touching of 'any part' of the victim's body is specifically prohibited." People v. Martinez, 11 Cal.4th 434, 442 (1995). "[T]he gist" of the offense has always been the defendant's intent to sexually exploit a child, not the nature of the offending act.[Citation.]" Id. at 444. Finally, in order to find true a multiple victim allegation, the jury must additionally determine that the People proved beyond a reasonable doubt that the lewd or lascivious acts were committed against more than one victim. Cal. Penal Code section 667.61.

Petitioner does not argue that there was insufficient evidence as to any particular element of the crime or enhancement. Rather, he argues that KS's trial testimony was insufficient because it was "contradictory, confused, and preceded months earlier by her appearance at the preliminary examination in which she was unable to remember *any* of the details she later claimed to recall at trial." [Doc. No. 1-1 at 19.]

Here, the California Court of Appeal decided Petitioner's insufficiency of the evidence claim by applying a legal standard wholly consistent with Jackson. [Lodgment 6 at 10-11.] In rejecting Petitioner's claim, the California Court of Appeal pointed out that the jury was presented with other testimony regarding KS's statements about the molestation in addition to that of KS. [Lodgment 6 at 12.] Moreover, any inconsistencies in KS' testimony and prior statements were fully argued to the jury. [Lodgment 6 at 13.] Finally, the evidence of Petitioner's prior convictions of lewd conduct upon a child in 1995 and his taped telephone admission of such earlier vaginal touching of his stepdaughter, was further evidence that he would touch KS and E for purposes of his own sexual gratification. [Lodgment 6 at 13.]

This adjudication of Petitioner's claims represents a reasonable application of the Jackson standard. Viewing the evidence at trial in the light most favorable to the prosecution, the evidence at trial was sufficient to support Petitioner's convictions for two counts of lewd and lascivious conduct and the multiple victim findings for each count. As the court of appeal recognized, such evidence included the following: KS testified at trial and was subject to cross-

1   examination [3RT 318-325]; KS' mother's testimony about how KS reported being molested by

2   Petitioner [3 RT 233-307]; the testimony of the social worker and the forensic interviewers about

3   KS's statements about the details of the molestations [ 3RT 341-345, 364-369; 4RT 481-485];

4   Petitioner's prior conviction of lewd conduct upon a child in 1995 [1CT 19-33] and his taped

5   telephone admission of such earlier vaginal touchings of his stepdaughter [4 RT 400-408.]

6        Accordingly, the California court's rejection of this claim was neither contrary to nor an

7   unreasonable application of Jackson.  Therefore, federal habeas relief on this claim should be

8   denied.

9   E.  Petitioner is not entitled to habeas relief on his fourth claim that the trial court committed

10  error by allowing evidence of Petitioner's 1995 conviction of child molestation.

11       Petitioner asserts the trial court committed error by allowing evidence of Petitioner's

12  1995 conviction of child molestation. [Doc. No. 1-1 at 21-25.] Respondent argues that the state

13  appellate court's rejection of this claim was neither contrary to, nor an unreasonable application

14  of, established United States Supreme Court authority. [Doc. No. 7 at 25-27.]

15       Petitioner presented this claim to the California Supreme Court in a petition for review.

16  [Lodgment 7 at 15-19.]  The California Supreme Court summarily denied the petition for review.

17  [Lodgment No. 8.]  In Y1st v. Nunnemaker, 501 U.S. 797, 804 (1991), the Court adopted a

18  presumption which gives no effect to unexplained state court orders but "looks through" them to

19  the last reasoned state court decision.  Petitioner presented this  claim to the appellate court in

20  the same fashion it was presented to the state supreme court. [Lodgment 7 at 15-19; Lodgment 3

21  at 20-25.]  The appellate court denied the claim in a reasoned opinion. [Lodgment 6, People v.

22  Dearment, D052188, slip op. (Cal. Ct. App. April 28, 2009).]

23       The Court will therefore look through the silent denial by the state supreme court to the

24  appellate court opinion.  The appellate court stated:

25              In limine, after noting it was inclined to allow the prosecutor's opposed
        request under Evidence Code section 1108 to present evidence concerning
26      Dearment's "prior involvement, which resulted in a guilty plea of child sexual
        offenses involving ... his own [step]daughter back in 1995, ... subject to knowing
27      how it's going to be presented," the prosecutor represented that she planned to
        have the actual victim testify as well as to play "a telephone conversation [to his
28      ex-wife] that was surreptitiously recorded in which [Dearment] made some
        admissions that formed the basis for his criminal prosecution some 12 years ago as

well."

Defense counsel objected to the admission of such evidence under Evidence Code section 352, arguing that it was too inflammatory, concerned evidence that was 12 years old, the age of the child victim was too similar to the instant case, the crime was too dissimilar because the child victim in this case was "outside [her] home," and it would "be all over for Mr. Dearment once the jury finds ... out [about the earlier sexual misconduct]."

The trial judge overruled the Evidence Code section 352 objection, stating:

"You know, [Evidence Code section] 352 talks about undue prejudice. And I am not going to sugarcoat it. This is devastatingly prejudicial evidence to [Dearment]. No doubt about it .[¶] If there was no history of this, then he, no doubt, would be able to paint a much better picture of what did or did not happen here. [¶] But it's the law. The law says it will be excluded only if [Evidence Code section] 352, under discretion of the judge, thinks that the prejudicial effect is so overwhelming beyond its probative value that it outweighs it. [¶] And it's devastating evidence. It's strong evidence. It's prejudicial evidence, as is almost all evidence that the prosecution presents against a defendant. [¶] But the quantum of its prejudice to your client is exceeded, in my view, by the probative value that it supplies to this jury. And I do not find that ... it has any aspects that would unduly prejudice your client, and in which the prejudicial value outweighs the probative value. They are both great. And I don't find that it should be excluded under [Evidence Code section 352.[¶] ... This case seems to be a model under which the drafters of Evidence Code section 1108 were operating. It's going to be allowed."

The court then turned to the issue of how such evidence would be presented. Concerned about the prosecutor "piling it on," the court noted it would allow the victim to testify, allow the parties to stipulate to having the fact of the earlier conviction be presented so the jury would not punish Dearment for his past conduct, and allow the prosecutor to either bring in evidence of the controlled call or the police officer's statement regarding Dearment's earlier admission, but not both. The court also noted it thought the evidence was also admissible under Evidence Code section 1101, subdivision (b) to show absence of mistake and Dearment's intent.

Subsequently, before the Evidence Code section 1108 evidence was presented at trial, the court granted defense counsel's request to further limit such evidence by having the prosecutor redact the controlled call between Dearment's ex-wife and Dearment before it could be played for the jury. Dearment's ex-wife then testified about the earlier incidents in 1995 where she caught him fondling her daughter in their bed, his admission to her that such had happened, and the pretextual call to confront him about the incidents to obtain his taped admission. Afterwards, the brief portion of the redacted tape was played for the jury. Dearment's former stepdaughter, 16 at the time of trial, then testified briefly that Dearment had rubbed her vagina more than one time while she was lying between him and her mother in bed when she was four years old.

On appeal, Dearment contends the trial court abused its discretion by overruling his Evidence Code section 352 objection and permitting the prosecutor to present the Evidence Code section 1108 evidence concerning his earlier

24

conviction for molesting his former stepdaughter. He specifically argues the court abused its discretion when it found both the prejudicial effect and the probative value of such evidence to be "great," but nonetheless declined to exclude it under Evidence Code section 352, and because such other crimes evidence was too similar to the crimes in this case. No abuse of discretion is shown on this record.

Subject to Evidence Code section 352, Evidence Code section 1108 permits a jury to consider prior incidents of sexual misconduct for the purpose of showing a defendant's propensity to commit offenses of the same type and essentially permits such evidence to be used in determining whether the defendant is guilty of a current sexual offense charge. (Evid.Code, § 1108, subd. (a).) [8] Although before Evidence Code section 1108 was enacted, prior bad acts were inadmissible when their sole relevance was to prove a defendant's propensity to engage in criminal conduct (see Evid.Code, § 1101[9]; People v. Falsetta (1999) 21 Cal.4th 903, 911, 913 ( Falsetta )), its enactment created a statutory exception to the rule against the use of propensity evidence, allowing admission of evidence of other sexual offenses in cases charging such conduct to prove the defendant's disposition to commit the charged offense. ( Id. at p. 911.) The California Supreme Court has ruled that section 1108 is constitutional. ( Id. at pp. 910-922.)

To be relevant on the issue of intent, uncharged crimes need only be sufficiently similar to a charged offense to support the inference that the defendant probably harbored the same intent in each instance. ( People v. Kipp (1998) 18 Cal.4th 349, 371 (Kipp).)
However, because Evidence Code section 1108 conditions the introduction of uncharged sexual misconduct or offense evidence on whether it is admissible under Evidence Code section 352,[10] any objection to such evidence, as well as any derivative due process assertion, necessarily depends on whether the trial court sufficiently and properly evaluated the proffered evidence under that section. "A careful weighing of prejudice against probative value under [ Evidence Code

---

[8] [Footnote in original] Evidence Code section 1108, subdivision (a), provides that "[i]n a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by [Evidence Code] Section 1101, if the evidence is not inadmissible pursuant to [Evidence Code] Section 352." This section allows admission, in a criminal action in which the defendant is accused of one of a list of sexual offenses, of evidence of the defendant's commission of another listed sexual offense that would otherwise be made inadmissible by Evidence Code section 1101, subdivision (a). The prior and charged offenses are considered sufficiently similar if they are both sexual offenses enumerated in Evidence Code section 1108, subdivision (d)(1)(A) through (F). ( People v. Frazier (2001) 89 Cal.App.4th 30, 41 (Frazier).)

[9] [Footnote in original] Evidence Code section 1101 provides in relevant part: "(a) Except as provided in this section and in Section[ ] ... 1108 ..., evidence of a person's character or trait of his ... character (whether in the form of ... evidence of specific instances of his ... conduct) is inadmissible when offered to prove his ... conduct on a specified occasion. [¶] (b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, absence of mistake or accident ... ) other than his ... disposition to commit such an act."

[10] [Footnote in original] Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, or of confusing the issues, or of misleading the jury."

11cv46

section 352] is essential to protect a defendant's due process right to a fundamentally fair trial. [Citations.]" ( People v. Jennings (2000) 81 Cal.App.4th 1301, 1314 ( Jennings ).) As our Supreme Court stated in Falsetta, in balancing such Evidence Code section 1108 evidence under Evidence Code section 352, "trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other ... offenses, or excluding irrelevant though inflammatory details surrounding the offense. [Citations.]" ( Falsetta, supra, 21 Cal.4th at p. 917.) In evaluating such evidence, the court must determine "whether '[t]he testimony describing defendant's uncharged acts ... was no stronger and no more inflammatory than the testimony concerning the charged offenses .' " ( People v. Harris (1998) 60 Cal.App.4th 727, 737-738 (Harris ).)

On appeal, we review the admission of other acts or crimes evidence under Evidence Code section 1108 for an abuse of the trial court's discretion. ( Kipp, supra, 18 Cal.4th at p. 371.) The determination as to whether the probative value of such evidence is substantially outweighed by the possibility of undue consumption of time, unfair prejudice or misleading the jury is "entrusted to the sound discretion of the trial judge who is in the best position to evaluate the evidence. [Citation.]" ( People v. Fitch (1997) 55 Cal.App.4th 172, 183.) The weighing process under section 352 "depends upon the trial court's consideration of the unique facts and issues of each case, rather than upon the mechanical application of automatic rules. [Citations.]" ( Jennings, supra, 81 Cal.App.4th at p. 1314.) " 'The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against defendant as an individual and which has very little effect on the issues. In applying section 352, "prejudicial" is not synonymous with "damaging." ' " ( People v. Bolin (1998) 18 Cal.4th 297, 320.) We will not find that a court abuses its discretion in admitting such other sexual acts evidence unless its ruling " 'falls outside the bounds of reason.' [Citation.]" ( Kipp, supra, 18 Cal.4th at p. 371.) In other words, we will only disturb a trial court's ruling under Evidence Code section 352 where the court has exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a miscarriage of justice. ( Frazier, supra, 89 Cal.App.4th at p. 42.)

Here, the record affirmatively reflects the trial court carefully considered Dearment's prior conduct and conviction, its nature and similarity to the charged offenses, and weighed its prejudice against its probative value, finding in the end that its prejudicial effect, though great, was outweighed by its probative value. Essentially, the court found the prior sexual acts evidence to be the precise type of evidence anticipated by the Legislature in enacting Evidence Code section 1108, that it revealed conduct no more prejudicial than the conduct for which the defendant was currently on trial (see Harris, supra, 60 Cal.App.4th at pp. 737-738) and it was highly probative as propensity evidence. (See People v. Waples (2000) 79 Cal.App.4th 1389, 1392-1395.) Although the earlier conduct was similar to the conduct in the current case, it was not identical. Dearment had previously been convicted of rubbing his four-year-old stepdaughter's vagina while here he was charged with applying lotion to and touching the vaginas of two minor victims, four-year-old KS and his own two-year-old daughter E, not only with his hands but also with his penis. The court spent considerable time with the parties to determine how the evidence would be presented and how to limit its prejudicial effect. In permitting counsel to apprise the jury that Dearment had already suffered a prior conviction and punishment for the earlier sexual misconduct based on his own

admissions, the court helped reduce its prejudicial impact by "ensuring that the jury would not be tempted to convict the defendant simply to punish him for the other offenses, [or have their attention] diverted by having to make a separate determination whether defendant committed the other offenses." ( Falsetta, supra, 21 Cal.4th at p. 917.) On this record, we cannot find that the trial court abused its discretion in weighing the proposed evidence under Evidence Code section 352 and admitting it under Evidence Code section 1108.

[Lodgment 6 at 23-29.]

The United States Supreme Court has clearly limited federal courts reviewing petitions for habeas relief to claims based upon federal questions: "it is not the province of the federal habeas court to reexamine state court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire (McGuire), 502 U.S. 62, 68 (1991).  Therefore, as a general rule, federal courts may not review a trial court's evidentiary rulings.  Crane v. Kentucky, 476 U.S. 683, 689 (1986) ("We acknowledge also our traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts."); Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir.1999), cert. denied, 528 U.S. 1198 (2000); Windham v. Merkle, 163 F.3d 1092, 1103 (9th Cir.1998).  A state court's evidentiary ruling, even if erroneous, is grounds for federal habeas relief only if it is so fundamentally unfair as to violate due process.  Dillard v. Roe, 244 F.3d 758, 766 (9th Cir.2001, as amended May 17, 2001), cert. denied, 534 U.S. 905 (2001); Henry, 197 F.3d at 1031; Spivey v. Rocha, 194 F.3d 971, 977 (9th Cir.1999), cert. denied, 531 U.S. 995 (2000); see also Windham, 163 F.3d at 1103 (The federal court's "role is limited to determining whether the admission of evidence rendered the trial so fundamentally unfair as to violate due process.").

"A habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision." Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir.), amended on other grounds by 421 F.3d 1154 (9th Cir.2005). Put simply, admission of evidence violates due process only if there is no permissible inference the trier of fact can draw from it. Id.; Houston v. Roe, 177 F.3d 901, 910 n. 6 (9th Cir.1999), cert. denied, 528 U.S. 1159 (2000); Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir.1991).

Here, Petitioner fails to meet his heavy burden to show a due process violation on the

11cv46

1   admission of evidence of the prior molestation.  The California Court of Appeals concluded that

2   the evidence was admissible under California Evidence Code section 1108, which states in

3   pertinent part:

4      (a) In a criminal action in which the defendant is accused of a sexual offense,
       evidence of the defendant's commission of another sexual offense or offenses is
5      not made inadmissible by Section 1101, if the evidence is not inadmissible
       pursuant to Section 352.
6   [Cal. Evid. Code section 1108.]

7       Petitioner argued that the trial court abused its discretion by allowing evidence of his

8   prior molestation conviction when the trial court found both the prejudicial effect and the

9   probative value of such evidence to be "great," but nevertheless did not exclude the evidence

10  under section 352. [Lodgment 7 at 18-19; Lodgment 3 at 24-25.]  Petitioner also argued that the

11  prior molestation conviction should have been excluded because it was too similar to the crimes

12  in this case and therefore highly prejudicial. [Id.] As the Court of Appeal noted, "the record

13  affirmatively reflects the trial court carefully considered Petitioner's prior conduct and

14  conviction, its nature and similarity to the charged offenses, and weighed its prejudice against its

15  probative value, finding in the end that its prejudicial effect, though great, was outweighed by its

16  probative value." [Lodgment 6 at 28.] The Court of Appeal also noted that, while the prior

17  conduct was similar to the conduct in the current case, it was not identical. [Id. at 28-29.]

18  Finally, the Court of Appeal noted that the trial court spent considerable time with the parties to

19  determine how the evidence would be presented and to reduce its prejudicial impact. [Id. at 29.]

20  Thus, the California Court of Appeal concluded that the trial court did not abuse its discretion in

21  weighing the proposed evidence under Evidence Code section 352 and admitting it under

22  Evidence Code section 1108, (id.), a conclusion to which this Court must again defer. Bains v.

23  Cambra, 204 F.3d 964, 972 (9th Cir.2000) (citing Wainwright v. Goode, 464 U.S. 78, 84

24  (1983)).

25      The question then is whether - despite the state court's compliance with California law -

26  Petitioner nonetheless can establish any federal violation sufficient to invoke a right to federal

27  habeas relief.  Again, there is no Supreme Court precedent prohibiting the use of prior bad acts

28  to prove propensity.  Estelle v. McGuire, 502 U.S. 62, 68-75 n. 5 (1991); Alberni v. McDaniel,

1   458 F.3d 860, 862-66 (9th Cir.2006), Garceau v. Woodford, 275 F.3d 769, 774 (9th Cir.2001),

2   rev'd on other grounds, 538 U.S. 202 (2003).[11]  In Alberni, the state court had determined that

3   due process was not violated by the admission of propensity evidence of past violent acts at the

4   petitioner's trial for second-degree murder.  485 F.3d at 863-67.  On habeas corpus review, the

5   Ninth Circuit held that the state court's ruling was not objectively unreasonable.  Id.

6        In Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir.2008), the Ninth Circuit rejected a

7   petitioner's claim that the admission of prior sexual offense evidence under California Evidence

8   Code section 1108 was unconstitutional. In doing so, the court specifically found that there is no

9   clearly established Supreme Court precedent establishing the admission of such propensity

10  evidence was unconstitutional, and, therefore, it could not be said that the California courts'

11  rejection of the claim either was contrary to, or involved an unreasonable application of, clearly

12  established federal law, as determined by the United States Supreme Court. Id.  The same result

13  is required in this case.

14       Even were this not true, the admission of propensity evidence here did not violate general

15  due process principles. In United States v. LeMay, 260 F.3d 1018 (9th Cir.2001), the Ninth

16  Circuit held that there is "nothing fundamentally unfair about the allowance of propensity

17  evidence." Id. at 1026. The Court explained that "[a]s long as the protections of [Federal] Rule

18  [of Evidence] 403[12] remain in place to ensure that potentially devastating evidence of little

19  probative value will not reach the jury, the right to a fair trial remains adequately safeguarded."

20  Id. (footnote added); see also United States v. Castillo, 140 F.3d 874, 881 (10th Cir.1998);

21  United States v. Mound, 149 F.3d 799, 801 (8th Cir.1998). Finally, in Mejia, the Ninth Circuit

22  found that the introduction of the propensity evidence in the total context of the case did not

23  render the trial fundamentally unfair and, in doing so,  noted that the petitioner had counsel to

24  defend him against the prior allegations and "specifically to cross-examine and mount a vigorous

25  defense against the alleged prior victim." Mejia, 534 F.3d at 1046.

26

27       [11] In fact, admission of this type of evidence is specifically allowed under federal law. See Fed.
R. Evid. 413, 414.

28       [12] Federal Rule of Evidence 403 is the federal counterpart to California Evidence Code § 352.

1    There is nothing in Petitioner's case that would require a different result from LeMay or

2 Mejia.  The trial court found that evidence of the prior molestation was admissible under

3 Evidence Code section 1108 as well as under Evidence Code section 1101[13] because it was

4 highly relevant to establish Petitioner's intent with regard to KS and E. [Lodgment 2, 1 RT at 48-

5 61.] Moreover, the trial court, after engaging in an extensive weighing of the  probative value

6 versus the  prejudicial effect of the evidence, worked with the parties to limit the prejudicial

7 impact of the evidence. [Lodgment 2, 1 RT 51-61.] In addition, Petitioner's counsel was given

8 the opportunity to cross-examine both Jaymi B (the prior victim) and Keri Carter (the prior

9 victim's mother and the Petitioner's ex-wife) about the prior incident, but chose not to do so.

10 [Lodgment 2, 4 RT 409, 414.] Finally, the jury was instructed that evidence of the prior molest

11 was received for a limited purpose and was not sufficient alone to convict Petitioner [Lodgment

12 1 at 62-63], and a jury is presumed to follow the instructions it is given.  Weeks v. Angelone,

13 528 U.S. 225, 234 (2000); Richardson v. Marsh, 481 U.S. 200, 211 (1987).

14    Accordingly, the Court finds that the California court's rejection of Petitioner's claim was

15 neither contrary to, nor involved an unreasonable application of, clearly established federal law,

16 as determined by the United States Supreme Court.  Therefore, habeas relief is not warranted on

17 this claim.

18 F.  Petitioner is not entitled to habeas relief on his fifth claim that the trial court committed error

19 by allowing expert testimony on child sexual abuse accommodation syndrome (CSAAS).

20    Petitioner claims the trial court committed error by allowing expert testimony on child

21 sexual abuse accommodation syndrome (CSAAS). [ Doc. No. 1-1 at 26-36.]  Respondent argues

22 that the state appellate court's rejection of this claim was neither contrary to, nor

23 unreasonable application of, established United States Supreme Court authority. [Doc. No. 7 at

24 27-30.]

25    Petitioner presented this claim to the California Supreme Court in a petition for review.

26

27    [13] Cal. Evidence Code section 1101(b) allows the admission of prior acts "when relevant to prove
some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of
mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted
28 unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his
or her disposition to commit such an act."

11cv46

1  [Lodgment 7 at 20-30.]  The California Supreme Court summarily denied the petition for review.

2  [Lodgment No. 8.]  In Y1st v. Nunnemaker, 501 U.S. 797, 804 (1991), the Court adopted a

3  presumption which gives no effect to unexplained state court orders but "looks through" them to

4  the last reasoned state court decision.  Petitioner presented this  claim to the appellate court in

5  the same fashion it was presented to the state supreme court. [Lodgment 7 at 20-30; Lodgment 3

6  at 25-46.]  The appellate court denied the claim in a reasoned opinion. [Lodgment 6, People v.

7  Dearment, D052188, slip op. (Cal. Ct. App. April 28, 2009).]

8          The Court will therefore look through the silent denial by the state supreme court to the

9  appellate court opinion.  The appellate court stated:

10          Dearment essentially challenges the propriety of California's rule allowing
     limited admission of CSAAS evidence, which is a collection of behaviors that has
11     been observed commonly in children who have experienced sexual abuse. ( People
     v. McAlpin (1991) 53 Cal.3d 1289, 1300 ( McAlpin ); see People v. Bowker
12     (1988) 203 Cal.App.3d 385, 389, 392-394 ( Bowker ).) Before addressing his
     specific contentions concerning CSAAS, we briefly set out the law in California
13     regarding such evidence and the relevant background regarding its admission in
     this case. We shall conclude Dearment's challenges to the CSAAS evidence either
14     fail or are waived.

15     A. The Pertinent Law
            CSAAS, which was developed as a therapeutic tool to assist mental health
16     professionals, describes five stages or behaviors commonly found in or
     experienced by, children who have been sexually abused, including secrecy,
17     helplessness, entrapment and accommodation, delayed disclosure, and retraction. (
     Bowker, supra, 203 Cal.App .3d at p. 389, fn. 3, p. 392, fn. 8.) Evidence regarding
18     CSAAS " ' "is admissible solely for the purpose of showing that the victim's
     reactions as demonstrated by the evidence are not inconsistent with having been
19     molested." ' [Citations.]" ( People v. Housley (1992) 6 Cal.App.4th 947, 955 (
     Housley ), quoting Bowker, supra, 203 Cal.App.3d at p. 394.) Such evidence,
20     however, "is not admissible to prove that the complaining witness has in fact been
     sexually abused; it is admissible to rehabilitate such witness's credibility when the
21     defendant suggests that the child's conduct after the incident-e.g., a delay in
     reporting-is inconsistent with his or her testimony claiming molestation." (
22     McAlpin, supra, 53 Cal.3d at p. 1300.) The expert testimony is "admissible for the
     limited purpose of disabusing a jury of misconceptions it might hold about how a
23     child reacts to a molestation." ( People v. Patino (1994) 26 Cal.App.4th 1737, 1744
     ( Patino ).)

24

25          Because particular aspects of CSAAS are as consistent with false testimony
     as true testimony, and there is a possibility that a jury could use the expert
26     evidence to improperly infer that the abuse occurred, the admission of such
     evidence is subject to certain limitations. ( Housley, supra, 6 Cal.App.4th at p. 955;
27     Bowker, supra, 203 Cal.App.3d at pp. 393-394; Patino, supra, 26 Cal.App.4th at p.
     1744.) First, the CSAAS evidence must be addressed or tailored to some specific

28

31

myth or misconceptions suggested by the evidence.[14] ( Housley, supra, 6 Cal.App.4th at p. 955.) Second, the jury must be admonished that the expert's testimony is not intended and should not be used to determine whether the victim's molestation claim is true, but is admissible solely to show that the victim's reactions are not inconsistent with having been molested. ( Id. at pp. 955, 958-959.)

B. Background

During in limine motions, the court noted that Dearment's counsel had filed written opposition in general to the prosecution's request for the admission of CSAAS evidence in its case-in-chief, asking that such evidence be limited so it would not relate to KS's specific complaints in this case. The court said it was inclined to allow the CSAAS evidence with the appropriate limitations, to conduct an Evidence Code section 402 hearing on the proposed expert's testimony and to preclude any mention of the CSAAS evidence until KS's credibility had been raised as an issue in the case.

Defense counsel agreed, but expressed concern that the same expert who was going to testify on the CSAAS evidence was also a witness who had interviewed KS and had conducted a forensic exam of the child. Counsel objected that permitting the expert to testify in both capacities might be "running ... afoul of the law in this area...." The prosecutor disagreed that there would be any problem because the forensic interviewer, in this case McLennan, would not be permitted to comment on the interview or the child's credibility and would only set the scene for the playing of the videotape of the interview with KS.

The court agreed with defense counsel that "the jurors could very easily allow [McLennan's] two roles to mesh somehow, and could very easily assess her testimony as it applies only to [KS,]" but thought "the issue is fixable by instructing the jury that this particular ... witness in this case is wearing ... two hats ... [a]nd that the jury is not to consider anything she says as an expert as applying to this particular victim, but only as an expert in general principles." The court invited defense counsel to prepare the proposed cautionary instruction in such regard. It also noted that there would have to be a "definite break" in the witness's testimony, so that there were two distinct parts and the jury instructed as to when she was "putting on a hat of an expert."

When defense counsel proposed to stipulate to the admission of the videotaped interview of KS with McLennan and just have McLennan testify as an expert on CSAAS, the court noted it was at a loss because it did not know the extent of McLennan's testimony under her interviewer role. However, the court said it would accept such a stipulation as to foundation for the admission of the video tape and allow McLennan to testify only as an expert if the parties chose to proceed in that manner, but would leave it up to the parties to work the matter out.

During trial, outside the jury's presence, the court noted it understood

---

[14] [Footnote in original] "Identifying a 'myth' or 'misconception' has not been interpreted as requiring the prosecution to expressly state on the record the evidence which is inconsistent with the finding of molestation. It is sufficient if the victim's credibility is placed in issue due to ... paradoxical behavior, including a delay in reporting a molestation. [Citations.]" ( Patino, supra, 26 Cal.App.4th at pp. 1744-1745.) CSAAS testimony "is admissible to rehabilitate [the complaining] witness's credibility when the defendant suggests that the child's conduct after the incident-e.g., a delay in reporting-is inconsistent with his or her testimony claiming molestation." ( McAlpin, supra, 53 Cal.3d at p. 1300.)

McLennan was going to be the next witness who would testify both about an interview with the alleged victim KS as well as give expert testimony regarding CSAAS. The court noted that although there had been initial discussions regarding an Evidence Code section 402 hearing, the defense had agreed such would not be necessary and that the cautionary instruction prepared by the defense regarding McLennan's two roles was "generally acceptable to the court." The court proposed to give the instruction after the first part of McLennan's testimony and before the second part as an expert. The parties agreed with that procedure although the prosecutor had not yet seen the instruction.

Subsequently, the parties "settled on the wording of the precautionary instruction" and before McLennan gave her expert testimony the trial judge instructed the jury as follows:

"Ladies and Gentlemen, Ms. McLennan the witness who's on the stand now, will be testifying today in two completely separate and distinct areas. And, in fact, in effect she will be wearing two hats. First of all, she has now testified about her interview with [KS] at Palomar Hospital. Second, she will now be testifying, as I understand it, about child sex abuse disclosure patterns, and suggestibility. [¶] Ms. McLennan's expert testimony in this area, is not evidence that Mr. Dearment committed any of the crimes charged against [KS]. You may consider this evidence only in deciding whether [KS's] conduct was or was not consistent with the conduct of someone who has been molested, in evaluating the believability of her testimony. You should not and must not conclude that because Ms. McLennan interviewed [KS] and has also testified as an expert, that she is giving an opinion on whether [KS] is telling the truth or was, in fact, molested by Mr. Dearment."

When the prosecutor started his direct examination of McLennan as an expert, he prefaced his first question by stating "we are going to ... just talk in general terms right now and separate the discussion from any knowledge you have of [KS] and the background here." McLennan then testified in general about concerns with the testimony of children including suggestibility, delayed reporting, life experiences, the ability to distinguish good from bad touching, studies done involving suggestible questions, and cognitive development of memory in children, comparing a child's ability to recall and relay information with that of an adult. Defense counsel cross-examined McLennan about disclosure of sexual abuse by young children and the suggestibility problem regarding children.

When the court instructed the jury on the law at the close of evidence, it again gave the agreed upon cautionary instruction regarding McLennan's testimony, reminding the jury that she was "wearing two hats" and that her "expert testimony was not evidence that Mr. Dearment committed any of the crimes charged against [KS]." The jury was additionally instructed in general regarding how to consider expert testimony. (CALCRIM No. 332.)

C. Issues and Analysis Concerning CSAAS on Appeal

Although Dearment recognizes California law admits CSAAS evidence for certain limited purposes, he specifically urges this court to break with such authority, to change California appellate law to follow the rule in other states and jurisdictions that such CSAAS evidence is "inadmissible for any purpose," because it violates a defendant's due process rights to a fair trial under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and to find that as a

matter of law the trial court erred in admitting McLennan's expert testimony because it was utilized to unfairly and improperly bolster the credibility of the prosecution's complaining minor witness KS. Dearment also claims the trial court committed prejudicial error in permitting McLennan to testify both as an interviewer of KS and also as the CSAAS expert, which "was undoubtedly given undue influence by the jury."

As the above record shows, and the People properly note in their respondent's brief, Dearment did not object at trial on the constitutional grounds he now raises or to the admission in general of CSAAS evidence. Rather, Dearment's only objections to such evidence were that its admission be properly limited and that there be a clear separation of McLennan's testimony on CSAAS from her testimony regarding her forensic interview with KS, which were both resolved to his satisfaction. Because Dearment did not object that CSAAS evidence should be held inadmissible in California for all purposes by abandoning its current recognition of such evidence[15] FN8 or that the testimony was too broad, improperly vouched for KS's credibility, was too closely related to the facts or allowed the jury to conclude molestation occurred, such appellate objections to the CSAAS evidence are waived. ( Evid.Code, § 353; cf. People v. Diaz (1992) 3 Cal.4th 495, 527-528.)

In any event, our review of the record in light of the pertinent law reveals the trial court did not abuse its discretion when it admitted McLennan's expert testimony concerning CSAAS. By the time she was called to testify as an expert, Dearment's counsel had cross-examined KS, her mother, and each of the social workers who had interviewed KS, attacking KS's credibility by highlighting inconsistencies in her testimony and suggesting that KS's various statements were in response to suggestive questioning. The misconception that a victim of child abuse would not immediately report the abuse, but keep it secret made the CSAAS evidence relevant in this case and its admission proper in the prosecutor's case-in-chief to rehabilitate the witness's credibility. ( McAlpin, supra, 53 Cal.3d at p. 1300.)

As noted above, the court properly admonished the jury as to the limited purpose of McLennan's expert CSAAS testimony, in which she neither mentioned this case or expressed an opinion that implied KS was telling the truth or that the molestations occurred. The court also read to the jury the expressly agreed upon instruction crafted by Dearment's counsel regarding McLennan's dual role and the need to consider her expert testimony separately from her earlier testimony regarding her forensic interview of KS. Such instruction given immediately before McLennan's expert CSAAS testimony and again before jury deliberations, and which we presume the jury followed ( People v. Lindberg (2008) 45 Cal.4th 1, 26),

---

[15][Footnote in original] Although California courts have certainly recognized the problems identified by Dearment and other states regarding CSAAS evidence (see Patino, supra, 26 Cal.App.4th at p. 1744; Housley, supra, 6 Cal.App.4th at p. 958), they have also found such evidence constitutionally admissible with proper admonishments to the jury regarding the limits of such evidence. ( Ibid.; Bowker, supra, 203 Cal.App.3d at p. 394.) Such proper admonishments were given in this case. Dearment has not produced any evidence that CSAAS evidence is no longer accepted in the scientific community or that California courts are prepared to reconsider their opinions accepting such evidence. Further, the California Supreme Court has referred to the admissibility of CSAAS evidence in a variety of factual contexts to support various rulings. (See McAlpin, supra, 53 Cal.3d at pp. 1300-1301; People v. Brown (2004) 33 Cal.4th 892, 905-906.) We are bound to follow the clear import of our high court's rulings. ( Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455.)

1    dispels any possible use of McLennan's expert testimony as specifically relating to
2    KS or this case. (See Housley, supra, 6 Cal.App.4th 955-956.) Without any
     affirmative showing otherwise, Dearment's assertion McLennan's expert testimony
3    "was undoubtedly given undue influence by the jury" because she also testified
     earlier about her forensic interview with KS is purely speculative on this record.

4         In sum, Dearment simply has not shown that the court abused its discretion
     in admitting the CSAAS evidence via McLennan's expert testimony in this case.
5    [Lodgment 6 at 29-37.]

6         Generally, a claim that a state trial court violated the Due Process Clause by admitting

7    expert testimony does not allege a violation of clearly established federal law, as required for

8    habeas relief under AEDPA. Briceno v. Scribner, 555 F.3d 1069, 1077–78 (9th Cir.2009);

9    Moses v. Payne, 555 F.3d 742, 761 (9th Cir.2009). In a habeas case raising a similar claim, the

10   Ninth Circuit noted that expert testimony about CSAAS has been admitted "in federal

11   child-sexual-abuse trials, when the testimony concerns general characteristics of victims and is

12   not used to opine that a specific child is telling the truth." Brodit, 350 F.3d at 991 (citing United

13   States v. Bighead, 128 F.3d 1329 (9th Cir.1997), and United States v. Antone, 981 F.2d 1059

14   (9th Cir.1992)). In Brodit, the court found that where the trial court instructed the jury that

15   expert testimony concerning CSAAS could not be considered as proof that the sexual abuse

16   occurred, the petitioner did not assert a violation of clearly established federal law in the

17   admission of the testimony. Brodit, 350 F.3d at 991.

18        Here, prior to McLennan giving her expert testimony, the court gave the jury an

19   instruction which had been agreed upon by both counsel.  The trial court instructed the jury that

20   Ms. McClennan was testifying "in two complete separate and distinct areas" and explained that

21   she was wearing "two hats" and had testified first about her interview with KS at the Palomar

22   Hospital and second would be testifying about child sex abuse disclosure patterns and

23   suggestibility. [Lodgment 2, 4 RT 462-463.] The court further instructed the jury as follows:

24        . . . you should not and must not conclude that because Ms. McClennan
          interviewed [KS] and has also testified as an expert, that she is giving an opinion
25        on whether [KS] is telling the truth or was, in fact, molested by Mr. Dearment.

26   [Lodgment 2, 4 RT 462-463.]

27        Because McLennan's expert testimony was not admitted to prove the ultimate question of

28   Petitioner's guilt, Petitioner cannot show that its admission violated clearly established federal

11cv46

law.  Brodit, 350 F.3d at 991; see Briceno, 555 F.3d at 1078 (holding that the admission of expert testimony by a gang investigator that the alleged crimes were committed to benefit a criminal street gang did not violate clearly established federal law); Moses, 555 F.3d at 761 (holding that the admission of expert testimony by a medical examiner concerning the cause of death, by a ballistics expert classifying the death as a homicide, and by a domestic violence counselor concerning the behavior of domestic violence victims, did not violate clearly established federal law); see also Estelle v. McGuire, 502 U.S. 62, 70 (1991) (holding that the petitioner's federal due process rights were not violated by the admission of expert testimony that the victim's prior injuries were consistent with battered child syndrome).

Assuming, arguendo, that Petitioner was able to show the trial court's admission of McLennan's testimony violated his constitutional rights, the Court also must determine whether, in the context of the trial as a whole, the error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). In evaluating the harmlessness of a constitutional error, the Court does not merely determine "whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence." Kotteakos, 328 U.S. at 765.

Here, even if the expert testimony was improperly admitted, such error was harmless.  KS testified at trial and was subject to cross-examination. [3RT 318-325.] Moreover, although KS did freeze during the preliminary hearing on certain questions regarding the molestation [Lodgment 2 at 7-17], her trial testimony and statements to her mother, the social worker and the forensic interviewers were consistent. [Lodgment 2, 3 RT 243-245, 314-326, 338-340; Lodgment 6 at 19-20.] Thus, the testimony as a whole showed a consistency in the reporting of the details of the molestation.  Petitioner's attorney vigorously attacked the credibility of the witnesses on cross-examination and in closing argument.  McLennan's testimony concerning CSAAS was carefully limited and did not refer to the individual circumstances involving any of the victims.  The jury was instructed that it could not consider her testimony as proof of guilt. Given the overall consistency in the evidence concerning the details of the molestation, the

limitations placed on McLennan's testimony, and the evidence concerning the prior molestation, Petitioner does not show that the admission of McClellan's  testimony had a substantial and injurious effect on the verdict.

For the foregoing reasons, the state courts' denial of Petitioner's claim was not contrary to, or an unreasonable application of, clearly established federal law.

## V.  CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) directing that Judgment be entered denying the Petition for Writ of Habeas Corpus.

**IT IS ORDERED** that no later than **November 23, 2011**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **December 7, 2011**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objection on appeal of this Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).


DATED:  October 24, 2011


_____
**CATHY ANN BENCIVENGO**
United States Magistrate Judge

11cv46